HARVARD LAW LIBRARY

*Litchfield,*
June, 1835.

Merriam
*v.*
Langdon.

MERRIAM *against* LANGDON and another :

### IN ERROR.

The carrying of goods about and offering them for sale, is, by the statute for the suppression of pedlars, &c. (*tit.* 74. *p.* 374.) considered as trading, deal-ing and trafficking in them.

Where a *qui tam* information on such statute, averred, that the complainant had seized certain goods, (describing them) for that the defendant did, un-lawfully and contrary to the statute, trade, deal and traffic as a pedlar, hawker and petty chapman, in such goods, which were foreign goods; and that they were, by the defendant, as a pedlar, hawker and petty chap-man, carried about and offered for sale, unlawfully; it was held, that these allegations were in conformity to the rule, which requires, that where an offence is created by statute, the facts and circumstances which constitute the definition of it, must be averred.

After such information has been filed, no other notice to the defendant, of its pendency, is necessary, than a copy of it left with him, by an indifferent per-son, in conformity with an order of the court.

Whether the notice so given be reasonable notice or not, an appearance and answer to the information without objection, constitute a waiver of objec-tions.

Where it was alleged in the information, that the defendant offered his goods for sale, to the public generally, and to certain individuals named, it was held, that the complainant might, under such averment, prove distinct offers to sell to each of those persons severally.

Where the complainant, on the trial of such information, offered sundry wit-nesses to shew, that on former occasions, within a short time before the defendant left home with the goods seized, he had repeatedly carried about and sold to the witnesses, as a pedlar, hawker and petty chapman, certain specified articles of foreign goods; it was held, that such evidence was ad-missible, not for the purpose of proving a distinct offence from that charg-ed in the information, but to shew the character of the defendant's busi-ness.

So where the complainant offered other witnesses to prove, that previous to the seizure of the goods, on the same day and the day before, the defendant had sold to them, respectively, from the load of goods seized, certain spe-cified articles of foreign goods, of a different description from any specifi-ed in the information; it was held, that such evidence was admissible for the same purpose.

If an itinerant pedlar furnishes his carriage with vendible commodities of dif-ferent descriptions, and, in that character, carries them about in search of customers, and sells them, from day to day, to different purchasers, the whole stock, in the absence of contradictory or explanatory evidence, will be considered as offered for sale.

Where the defendant's attorney, after the seizure of the goods, and after they had been inventoried and appraised, applied to the justice in whose custody they were, for an inspection of them and for a copy of the inven-

tory, which, through the interference of the complainant, was refused ; it was held, that such inventory was not thereby rendered a nullity.

A *qui tam* information is amendable after the time limited for presenting a new information for the offence charged, has elapsed.

The allowance or disallowance of an amendment, in a particular case within the general power of the court, is a matter of *discretion*, and therefore, not a ground of error.

*Litchfield,*
June, 1835.

Merriam
*v.*
Langdon.

THIS was an information *qui tam,* brought before the county court, by *Warner* and *Langdon* against *Alvah Merriam,* alleging, That on the 16th of *May,* 1832, the complainants, by virtue of a certain statute law of this state, entitled "An act to suppress Pedlars. Hawkers and petty Chapmen," seized the following goods, wares and merchandize [describing them] of the value of 295 dollars ; for that the defendant, on said 16th of *May,* 1832, at *Plymouth,* in this state, did unlawfully and contrary to said statute, trade, deal and traffick, as a pedlar, hawker and petty chapman, in the goods, wares and merchandize above described, which were foreign goods, wares and merchandize, and not the produce or manufacture of this state, or of any of the *United States ;* that they were, then and there, and long before had been, by the defendant, as a pedlar, hawker and petty chapman, carried about and offered for sale, unlawfully, to the public generally, and also to the following persons, *viz. Anna Lewis, S. A. Tuttle, Miles B. Ford, Jonathan Andrews, Charles Butler, Zalmon Cole, Lewis Bradley, Emily Terry* and *Angelina Coley,* contrary to the statute law aforesaid ; by force whereof and by means of the premises, the said goods, wares and merchandize, by the complainants seized as aforesaid, have been forfeited, one half, &c. ; that the complainants having seized said goods, wares and merchandize as aforesaid, offered the same to *Ransom Blakeslee,* Esq. of said *Plymouth,* a justice of the peace, who caused them to be inventoried, and to be appraised, by *Ambrose Ives* and *Solomon Parker,* both indifferent freeholders under oath, who appraised them at their just value in money, amounting to 295 dollars ; and that said *Ransom Blakeslee,* Esq. now holds them in his custody.

This information was presented to the county court of *Litchfield* county, at its term on the 4th *Tuesday* of *September,* 1832, and was entered in the docket. The court ordered the in-

HARVARD LAW LIBRARY

*Litchfield,*
*June, 1835.*

Merriam
*v.*
Langdon.

formation to be continued to the next term, holden on the 3rd *Tuesday* of *December*, 1832; and that notice of the pendency thereof should be given to the defendant, by leaving with him, by an indifferent person, at least twelve days before said 3rd *Tuesday* of *December*, a true and attested copy of said information. This order was complied with. The defendant appeared; claimed the goods seized to be his; and made answer to the information, denying the truth of all the allegations therein, except that regarding the seizure of his goods; on which issue was joined.

At the term of the court in *September*, 1833, to which term the cause came by continuance, the complainants moved to amend their information, so as to change the form of the allegations, but not the ground of action. To this the defendants objected; but the court overruled the objection and allowed the amendment.

On the trial, at the next term, (*December*, 1833,) it was admitted. that the defendant started from his home in *Woodbury*, a day or two before the seizure, with a load of goods, of which those specified in the information were a part, and went with them to the town of *Plymouth*, where the goods specified were seized, by the complainants. To shew that the defendant was carrying these goods about as a pedlar, hawker and petty-chapman, and that before and at the time mentioned in the information, he dealt, traded and trafficked as such, the complainants offered to prove, by *Leveret Bishop* and others, that on former occasions, but within a short time before the defendant left home with the goods seized, he had repeatedly carried about and sold to them respectively, as a pedlar, &c. certain specified articles, and that those articles were foreign goods, and not the produce of this or any other of the *United States*. To the admission of this evidence the defendant objected; but the court admitted it, for the purpose for which it was offered.

To prove the issue on the part of the complainants, they offered the testimony of *S. A. Tuttle* and others, to prove, that before the seizure, *viz.* on the day of the seizure and the day previous, the defendant sold to them respectively, certain specified articles from the load of goods seized, of a description different from any specified in the information; and that such articles were foreign goods, and not the produce of this or any

other of the *United States.*  To this evidence also the defendant objected ; but the court admitted it.

To shew that the defendant offered the goods for sale, as alleged in the information, the complainants offered to prove, by each of the persons named in the information, that they had several and separate interviews and transactions with the defendant, some on the day before the seizure, and others on the same day, but before the seizure.  To the admission of this evidence the defendant objected, insisting, that the complainants, under the averments in the information, could prove only an offer of the goods to these persons jointly, or to some one of them.  The court admitted the evidence as offered.

The complainants further offered to prove, by *Jonathan Andrews,* that just before the seizure of the goods, the defendant was in one of the streets of the village of *Plymouth,* with a pedlar's wagon, in which were goods, wares and merchandize ; and that *Andrews* enquired of the defendant whether he had any *Italian* silk for sale—this being a different description of goods from any specified in the information—to which the defendant replied that he had, and thereupon the defendant took from his wagon a piece of *Italian* silk, and offered it to the witness for sale.  It was admitted, that the goods specified in the information, though then in the wagon, were not any of them named or shewn to the witnesses, nor to any other person present.  To this evidence the defendant objected, on the ground that it did not conduce to prove an offering for sale of the goods specified in the information, within the meaning of the statute.  The court admitted the evidence for the purpose for which it was offered.

The complainants having given evidence to prove, that after they had seized the goods, they carried them forthwith to *Ransom Blakeslee,* Esq., a justice of the peace, who received them, and immediately caused them to be inventoried and appraised ; the defendant offered the testimony of *Romeo Lowrey,* Esq. to prove, that he, as the attorney of the defendant, applied, on the 16th of *May,* 1832, to said justice, for an inspection of the inventory and appraisal, and for a copy thereof, and also for permission to examine the goods, for the purpose, as stated by said attorney, of commencing an action against the complainants for the taking of them ; and that in consequence of the interference of the complainants, said justice refused to

*Litchfield,*
June, 1835.

Merriam
*v.*
Langdon.

comply with every part of such request; and thereupon the defendant objected to the receiving of said inventory and appraisal in evidence; contending, that by means of the conduct of the complainants and of said justice in regard thereto, they were nullities. The court overruled the objection and received them in evidence.

The complainants obtained a verdict; and the defendant filed a bill of exceptions to the decisions of the county court above stated, and thereupon brought a writ of error in the superior court, assigning such decisions, severally, and the insufficiency of the information, as grounds of error. The writ of error was reserved for the consideration and advice of this Court.

*T. Smith* and *O. S. Seymour*, for the plaintiff in error, after remarking, that the statute on which this proceeding is founded, is penal, and that the proceeding is in the nature of a prosecution for an offence, which the prosecutor seeks to punish, by subjecting the offender to the forfeiture annexed to the offence; and that this proceeding, therefore, is to be governed by the rules which govern criminal proceedings—so far, at least, as relates to the sufficiency of the information—contended,

1. That the information is fatally bad. It charges no breach of the law, by the plaintiff in error, in regard to *the goods seized.* There is no averment that he did trade, deal and traffic in *these goods,* as a pedlar, &c. The averments in the information on this subject, are mere naked averments of his dealing in foreign goods, without stating *with whom* he dealt, or *what articles* were the subject of his trafic, or when the trading took place, except by a broad allegation, that it was on the 16th of *May,* 1832, and within one year next preceding. The statute subjects to forfeiture only such goods as are the subject of the forbidden traffic. It will hardly be contended, if a person violates the law in trading with *some* foreign goods, that *other* foreign goods, with which he has not dealt in violation of the law, can be seized. The information must set forth the offence in the words of the statute. 1 *Chitt. C. L.* 286. 289. 2 *Sw. Dig.* 384, 5. 2 *Hawk, P. C.* 354. 378. *Hamper's* case, 2 *Leon.* 211. *S. C.* by the name of *Lembro* and *Hamper, Cro. Eliz.* 147. Dr. *Foster's* case, 11 *Co.* 58. *a.*

The words in which the offence is charged in this informa-

*Litchfield*,
June, 1835.

Merriam
*v.*
Langdon.

tion, are not a statutory definition of the prohibitions of the statute. To trade as a pedlar, is to *retail* goods. But the words used in the information imply a *wholesale* dealing. All these goods, at one and the same time, are offered to the public generally and to sundry individuals named. These words are, at least, *consistent* with a wholesale dealing; and the words " as a pedlar," &c. do not help the information.

2. That an amendment was not allowable after the time for filing a new information had passed.

3. That the testimony of *Leveret Bishop* and others, that the plaintiff in error had, on former occasions, repeatedly carried about foreign goods and sold them to the witnesses, was utterly irrelevant. This was a sheer attempt to prove the offence alleged, by evidence of another prior and entirely distinct offence, which the defendant could not be prepared to meet, and of which he had no notice in the information. There is the same connexion between the fact that the defendant had formerly traded in foreign goods, and the facts charged in the information, as there always is between one crime and another, and no other connexion.

4. That the evidence offered and received by the court, in order to shew the *manner* in which the defendant traded, *viz. as a pedlar*, &c. was not admissible. The object was, to shew, that the defendant had assumed the *character* or *capacity* of a pedlar, before he did the acts complained of. But the statute has nothing to do with the *capacity,* as such, in which men trade, but is aimed against a particular mode of traffic, which it describes, by the periphrasis " trading as a pedlar." The statute prohibits " the retailing of foreign goods by carrying them about ;" and whoever so retails foreign goods, breaks the law, whether he has the capacity of a pedlar or not ; and whoever does not so retail foreign goods, is innocent of a violation of this statute, how fully soever he may have taken on himself the character and capacity of pedlar. Does the fact, then, that the defendant, on former occasions, traded in the manner of a pedlar, shew, that the goods in question were dealt with by him as a pedlar ?

In the first place, there is no necessity for such proof. If the goods have been sold, or offered for sale, the circumstances can all be detailed by the witnesses.

Secondly, there is no connexion between such proof and the

*Litchfield,*
*June,* 1835.
————
Merriam
*v.*
Langdon.

facts sought to be established. The *manner* of a former sale no more proves the manner of a subsequent one, than the fact of a former *trading* proves the fact of a subsequent trading.

Thirdly, this evidence is inadmissible, as being altogether out of the issue, and what the defendant could not come prepared to meet. It is enough that on the vague allegations of this information he should be compelled to meet the facts charged; but this proof relates to matters, which have no connexion, in time or place, with the charges made.

But fourthly, this evidence was not confined to showing the mode in which the goods were disposed of. It was admitted to prove the whole offence, excepting only the fact that the goods were foreign. It was admitted to shew that the defendant did, in the language of the statute, " deal, trade and traffic" at that time, " as a pedlar," &c. 1 *Phill. Ev.* 143. 1 *Chitt. C. L.* 564. *Stalker* v. *The State,* 9 *Conn. Rep.* 341. *Rex* v. *Smith,* 2 *Carr.* & *Payne* 633. (12 *Serg.* & *Lowb.* 295.) [The other points stated in the bill of exceptions were adverted to, and briefly discussed, by one of the counsel, but were not much pressed.]

*P. Miner* and *W. W. Ellsworth,* for the defendants in error, contended, 1. That the information was sufficient. In the description of the offence, it follows the statute closely. The statute declares, " That no person shall trade, deal and traffic, in this state, as a pedlar, hawker or petty chapman, in any foreign goods, wares and merchandize, and which are not the produce or manufacture of this or any of the *United States.*" The information avers, that the defendant, on the 16th of *May,* 1832, at *Plymouth,* in this state, did, contrary to said statute, trade, deal and traffic, as a pedlar, hawker and petty chapman, in the goods, wares and merchandize described in the information, which were foreign goods, &c. not the produce or manufacture of this state, or of any of the *United States.* The very words of the statute, and no others, are used to describe the offence. If language could state an offence within the statute, this information has done so.

2. That the allowance of the amendment was no ground of error. In the first place, a criminal information may be amended at common law; there being no difference between civil and penal actions at common law. 2. *Sw. Dig.* 399. 1 *Chitt.*

Litchfield,
June, 1835.

Merriam
v.
Langdon.

*C. L.* 352.   *Low* q. t. v. *Little,* 17 *Johns. Rep.* 346.   So an information in a proceeding *in rem* in admiralty, may be amended.   *The Brig Caroline,* 7 *Cranch* 496.   *The Schooner Anne,* 7 *Cranch* 570.   *The Adeline,* 9 *Cranch* 244. 284.   *The Edward,* 1 *Wheat.* 261.   *The Divina Pastora,* 4 *Wheat.* 52. 64.   *The Marianna Flora,* 11 *Wheat.* 1· *Anon.* 1 *Gallis.* 22.

Secondly our statute authorizes amendments of all writs and declarations, not varying the cause of action nor the form of it. *Stat.* 44. *tit.* 2. *s.* 33.   Such was the amendment in this case. That this is a *qui tam* information does not take the case out ' of the statute.   A *qui tam* information is a *civil action ;* and as such, it is appealable.   *Huntley* & al. v. *Davis,* 1 *Conn. Rep.* 391.   *Burnham* v. *Barker,* 2 *Root* 526.

Thirdly, the allowance of an amendment, being a matter of *discretion,* is not a ground of error.   *Mellish* v. *Richardson,* 9 *Bing.* 125.   (23 *Serg.* & *Lowb.* 276.)   *Mandeville* & al. v. *Wilson,* 5 *Cranch* 15.   *Walden* d. *Denn* v. *Craig,* 9 *Wheat.* 576.   *Chirac* & al. v. *Reinicker,* 11 *Wheat.* 280. An amendment rests on the same ground, in this respect, as a new trial.   *Magill* v. *Lyman* & al. 6 *Conn. Rep.* 59.   *White* v. *Trinity Church,* 5 *Conn. Rep.* 187.   Or the continuance of a cause.   *Woods* & al. v. *Young,* 4 *Cranch* 237.

3. That the evidence adduced by the complainants, to shew that the defendant had previously carried about and sold foreign goods as a pedlar, was admissible and proper to prove the facts in issue.  The two general facts involved in the issue, were, that the defendant traded in foreign goods, and that he did this as a pedlar.   Both of them were essential to the action.   Evidence that the defendant was, just before, peddling the like goods, to others, either out of this identical load or another, conduced to prove his character, at the time of the wrong complained of, and that in that character he was acting.   The testimony of *L. Bishop* and others was offered only to prove the character.   That of *S. A. Tuttle* and others conduced to prove both facts.

4. That the other evidence offered by the complainants and admitted, was unexceptionable.

5. That the evidence offered by the defendant, was properly rejected.  The object of it was to shew, that Mr. Justice *Blakeslee* was not disposed to accommodate the defendant's attorney, or

HARVARD LAW LIBRARY

*Litchfield,*
*June, 1835.*

*Merriam*
*v.*
*Langdon.*

to aid him in his preparation for a suit. But, in the first place, the complainants had nothing to do with *that.* Secondly, it did not undo what had been done. Nor was it a consummating act.

CHURCH, J. Most of the exceptions, suggested by the plaintiff in error, to the proceedings and judgment of the county court, are, in our opinion, the result rather of professional ingenuity than of plausible objection ; and we have no difficulty in disposing of them accordingly. Such are the following.

1. That no other notice of the filing of the information and its pendency in the county court, was given to the defendant below, than by leaving with him a copy of it, by an indifferent person, in conformity with an order of that court.

The statute under which these proceedings have been conducted, has made no provision for notice in such cases ; and the general statute provision authorizing courts of law to make orders of notice, does not embrace the present case. But the power exercised by the court was necessary to the exercise of its jurisdiction and for the purposes of justice ; and if the notice given was reasonable, it was legal. It is not claimed, that the notice was unreasonable, either in respect to time or manner ; on the contrary, the defendant appeared upon the notice, made defence and was fully heard without objections. He must be considered as having waived them, therefore, if any cause of objection to the notice existed.

2. That for the purpose of proving that the defendant was carrying about the goods seized, as a pedlar, hawker and petty chapman, and that at and before the time of seizure, he did deal and traffic as such, the court admitted *Leveret Bishop* and others, to testify, that on former occasions, within a short time before the defendant left home with the goods seized, he had repeatedly carried about and sold, *as a pedlar,* &c. to the witnesses, certain specified foreign goods.

To constitute an offence under this statute, so as to incur a forfeiture of goods, it is not sufficient that the defendant, in any one instance, has sold foreign goods, unless he has done so in a particular character ; he must have traded, dealt or trafficked in such goods as *a pedlar, hawker, and petty chapman ;* and it was only for the purpose of proving the character of the defendant's business and occupation, that this evidence was ad-

mitted; and for such purpose it was certainly admissible, as conducing to prove, that he was, at the time of the seizure, carrying about and offering for sale these goods, in the same character, and not for the purpose of proving upon him a distinct offence, with which he was not charged in the information. 2 *Stark. Ev.* 372. *The King* v. *Little,* 1 *Burr.* 609. 10 *Petersd. Abr.* 207. Very much to the same purpose was the testimony of *S. A. Tuttle* and others, which was admitted to prove, that previous to the seizure, on the same day, as well as the day before, the defendant had sold to them, respectively, from *the same load of goods seized,* certain specified articles of foreign goods of a different description from any described in the information.

It was earnestly insisted, at the bar, that this evidence did not conduce to prove, that the *goods seized* were offered for sale, although they were a part of the same load of goods from which foreign goods had been, by the defendant, just before sold : that as the statute upon which this prosecution is founded, is a penal statute, and as such, should be construed strictly, it would not justify the introduction of this evidence for the purpose of proving the issue in this case, *viz.* that the defendant had carried about and offered for sale the goods seized.

That penal statutes should be construed strictly, is an elementary principle ; yet they should not be construed so strictly as to defeat the essential purposes of their enactment, when the intent is clear ; but, on the contrary, their language should be understood in its common, customary and popular signification. *The United States* v. *Wiltberger,* 5 *Wheat.* 76. *The American Fur Company* v. *The United States,* 2 *Pet.* 358. 1 *Sw. Dig.* 12.

What is an offer to sell goods, within the obvious intent of this law ? Can no other article be seized but that one which is particularly selected from others, and handed out to a purchaser for sale ? Is no other yard of cloth the subject of forfeiture but that one which a purchaser selects to be cut from a larger piece ? So to construe the law would be to defeat its object. If a merchant places his goods upon his shelves, opens his shop for business and invites the calls of customers ; or if an itinerant pedlar furnishes his carriage with vendible commodities of different descriptions, and in that character, carries them about in search of customers, and sells, from day to day,

*Litchfield,*
June, 1835.

Merriam
*v.*
Langdon.

to different purchasers, we must studiously exclude all common sense, to say, in the absence of contradictory or explanatory evidence, that *the whole stock* is not offered for sale. But this testimony was admissible, not only for this purpose, but, as was the testimony of *Bishop* and others, it was admissible to prove another part of the issue, that the defendant was a pedlar, hawker and petty chapman of foreign goods, and that he carried about the goods in question in *that character.* And for the same reasons, the testimony of *Jonathan Andrews* was admissible.

3. Because it was alleged in the information, that the defendant offered for sale his merchandize to *Anna Scovill, S. A. Tuttle, Miles B. Ford,* and several other individuals named, it was objected, that the plaintiffs could not, under such averment, prove distinct offers to sell to each of said persons severally.

We think the obvious meaning of the information, in this part of it, is, that the defendant offered to sell, severally, to each of these persons. He *carried the goods about,* and offered them for sale to the public generally, and also to the before-named individuals, is the language of the information; as if it had been, that the defendant had carried about and offered his goods for sale to the public generally, and to *Anna Scovill,* and also to *S. A. Tuttle,* and also to *Miles B. Ford,* &c.

4. That the inventory lodged with Justice *Blakeslee* was a nullity, and should have been so adjudged by the county court; because *Blakeslee,* by the interference of the plaintiffs, refused to the defendant's attorney both an inspection and a copy of it.

The inventory was either good or not, when made and returned to the justice, as the law directs: it could not receive a character *ab initio* from subsequent events. If it was the duty of the magistrate either to permit an inspection or furnish a copy of the inventory, and he unjustly refused, the remedy of the defendant was obvious; and no necessity existed for treating the proceedings as void.

Objections of a more grave and doubtful character than such as have been noticed, have been urged against the proceedings of the county court; but upon a careful examination of them, we are persuaded that they should not prevail.

5. It is said, that the information is insufficient, because it does not allege, that the defendant traded, dealt and trafficked in

HARVARD LAW LIBRARY

the goods seized. By the statute under consideration, it is en-acted, "That no person shall trade, deal and traffic, in this state, as a pedlar, hawker or petty chapman, in any foreign goods, wares and merchandize, and which are not the produce or manufacture of this or any of the *United States,* upon pe-nalty of forfeiting all such goods, wares and merchandize so by him *carried about and offered* for sale." It is obvious, that the carrying about and offering for sale goods, is, by this statute, considered as trading, dealing and trafficking in them. The information avers, in the words of the statute creating the of-fence, that the defendant did, unlawfully, and contrary to said statute, trade, deal and traffic, in this state, as a pedlar, hawker and petty chapman, &c. It also avers, that the goods seized were, by the defendant, " as a pedlar, hawker and petty chap-man, then and there, and long before, *carried about and offered for sale,*" &c. It will not be easily discovered in what other form more definite, the offence could have been set forth. The allegations, in this respect, clearly conform to the rule which requires, that where an offence is created by statute, the facts and circumstances which constitute the definition of it, must be averred. 2 *Sw. Dig.* 384. 2 *East's P. C.* 985.

6. It is further claimed, that the county court erred in permitting the plaintiffs to make material amendments of the information after the time for presenting a new information had passed.

By the statute regulating these proceedings, it is provided, that the information against the goods seized shall be made to the *next county court.* This amendment was allowed at the fourth term of the court after the seizure. By the 6th section of the statute of limitations, it is enacted, "that no suit or action for any forfeiture upon any penal statute, shall be brought, by any person or persons, who may lawfully sue for the same, but within one year next after the offence committed." The offence here charged was committed *May* 16th, 1832 ; and the amend-ment was made at the *September* term of the county court, 1833. No new information could, at that time, have been lodged against these goods.

Indictments cannot be amended, because they are the acts of a grand-jury upon oath, and cannot be altered, without the consent of the grand-jury. 2 *Sw. Dig.* 386. *Rex* v. *Wilkes,* 4 *Burr.* 2570. *Hawk. P. C.* 25. *Regina* v. *Tuchin,* 6 *Mod.* 281. 1 *Petersd. Abr.* 597.

*Litchfield,*
June, 1835.

Merriam
*v.*
Langdon.

HARVARD LAW LIBRARY

*Litchfield,*
*June, 1835.*
———————
Merriam
*v.*
Langdon.

Informations, whether presented by public officers or *qui tam*, or whether operating *in rem* or otherwise, are amendable. 1 *Petersd. Abr.* 599. *Rex* v. *Nixon*, 1 *Stra.* 185. *Rex* v. *Holland*, 4 *Term Rep.* 457. *Bonfield* q. t. v. *Milner*, 2 *Burr.* 1098. *Tallieur* v. *Cocks*, cited in *Steel* v. *Sowerby*, 6 *Term Rep.* 173. *Broadfoot* v. *The United States*, 7 *Cranch* 496. *Schooner Ann* v. *The United States*, 7 *Cranch*, 570. Anon. 1 *Gallis.* 22.

Amendments of informations, where the statute of limitations had run against the offence charged, have, in some instances, been refused, in *England;* but only in cases where there had been unreasonable delay in the prosecution, or where the effect of the amendment would have been to introduce a new cause of action itself barred by the statute. *Goff* q. t. v. *Popplewell*, 2 *Term Rep.* 707. *Steel* q. t. v. *Sowerby*, 6 *Term Rep.* 171. *Ranking* & al. q. t. v. *Marsh*, 8 *Term Rep.* 30. *Cross* v. *Kaye*, 6 *Term Rep.* 543. *Peters* v. *Craft*, 4 *East*, 433. Case of *The Harmony*, 1 *Gallis.* 123.

But where no such reasons existed, amendments of *qui tam* informations have been allowed, notwithstanding no new information for the same cause could then be made; and such amendments were permitted in the following cases. *Bearecroft* v. *Hundred of Burnham*, 3 *Lev.* 347. *Bonfield* q. t. v. *Milner*, 2 *Burr.* 1098. *Tallieur* v. *Cocks*, cited 6 *Term Rep.* 173. *Mace* q. t. v. *Lovett*, 5 *Burr.* 2833. *Maddock* q. t. v. *Hammett*, 7 *Term Rep.* 55. *Davis* q. t. v. *Saunders*, 7 *Mass. Rep.* 62. The only case which has suggested to us a doubt on this subject, is that of *Drake* q. t. v. *Watson*, 4 *Day*, 37. in which the superior court, having refused liberty to amend a *qui tam* information upon the statute of usury, because the offence was then barred by the statute of limitations, this court, upon writ of error, refused to reverse that judgment. We have no occasion here to overrule the opinion of the court in that case, as it is plainly distinguishable from this. If the superior court had permitted the amendment to be made, and the judgment had been reversed on that account, we should believe it our duty to examine with more care the principles and reasons of that decision. It is certainly very well settled, at this time, that where the power of permitting amendments is conferred upon courts, the allowance or disallowance of them is a

matter of discretion with the court, and therefore, affords no ground for a writ of error; and this principle is of itself sufficient to justify the court of errors, in the case of *Drake* v. *Watson*, in refusing to reverse the decision of the superior court; and the same principle should govern us in affirming the judgment of the county court in this case.    *Mandeville* & al. v. *Wilson*, 5 *Cranch*, 15.    *Chirac* v. *Reinicker*, 11 *Wheat.* 280.    *The United States* v. *Bedford*, 3 *Peters* 31.    *Mellish* v. *Richardson*, 9 *Bing.* 125. (23 *Serg. & Lowb.* 276.)    The case of *Eno* v. *Frisbie*, 5 *Day*, 122. was referred to, as opposing this principle; but it does not.    That was a case of *void process*, attempted to be sustained, by resort to an amendment of it. And the court, very correctly, determined, that a *void process* could not be amended.    *Bunn* v. *Thomas* & al. 2 *Johns. Rep.* 190.    *Buck* v. *Barnard*, 4 *Johns. Rep.* 309.    *Cramer* v. *Van Alstyne*, 9 *Johns. Rep.* 386.

The laws of this state regulating the amendment of writs and declarations, have been variously modified, at different periods.    By a statute enacted in 1724, an amendment was allowed only after a judgment upon a plea in abatement.    Under this statute, it became a question whether a plaintiff might not admit his writ or declaration to be abateable, and treat it as abated, without a plea and judgment, and move for its amendment; and this question was finally decided affirmatively, in *September*, 1793, in the case of *Livingston* & al. v. *Abel*, 2 *Root*, 57; and to put that question entirely at rest, it was enacted, by the general assembly, in *May*, 1794, " That the *several courts* of law and equity in this state, in any action hereafter brought, *may, at any time, permit* the parties respectively to amend," &c.    And such was the law when the case of *Drake* v. *Watson* was decided; and so it continued to be until the revision of 1821, when it was, by statute, provided, not that the court might permit the plaintiff to amend, but that " The plaintiff may amend any defect, mistake or informality in the writ or declaration, &c. provided such amendment shall not change the form or ground of the action," &c.    It has not been claimed, that the amendment in this case, operated to change either the form or ground of the action; and as it did not, how could the court withhold from the plaintiff the right to amend, which the law had given him?    The payment of costs upon the amendment was a subject upon which the court

*Litchfield,*
*June, 1835.*

Merriam
*v.*
Langdon.

could exercise its discretion ; but the right to amend could not, under the circumstances of this case, be taken away.

We are of opinion, therefore, that there is nothing erroneous in the judgment of the county court, and do advise the superior court accordingly.

The other Judges  concurred in this opinion, except HUN-TINGTON, J., who gave no opinion, having  been consulted in the cause.

Judgment to be affirmed.