### THE STATE OF CONNECTICUT *vs.* CHARLES B. CROSS.

Third Judicial District, Bridgeport, April Term, 1900. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

A finding by the trial court, based upon conflicting testimony and depending upon the credibility of witnesses, that confessions of guilt by the accused were freely and voluntarily made, is one which this court cannot review upon appeal.

While such a confession may be excluded, if it appears to be of little weight and unreliable, and its admission would be, on the whole, unfair to the accused, yet the determination of that matter is one lying within the discretion of the trial judge, whose action thereon, in the absence of a palpable abuse of such discretion, does not constitute an error reviewable by this court.

Counsel for a prisoner awaiting trial should be permitted, at all reasonable times and under proper restrictions, to freely consult his client; and this right, if refused, may be enforced by legal proceedings.

Section 1399 of the General Statutes in relation to murder does not change the common-law definition of that crime, but merely provides that such crime, if committed under certain circumstances, shall be deemed to be murder in the first or second degree, and prescribes the punishment accordingly.

A non-expert witness, having stated the extent of his personal acquaintance with the accused, may give his opinion of the latter's sanity.

The trial court has some control over the scope and extent of an inquiry directed to ascertaining the intelligence and capacity of jurors, and may properly exclude trivial or inconsequential questions addressed to them.

Argued April 19th—decided May 1st, 1900.

INDICTMENT for murder in the first degree, brought to the Superior Court in Fairfield County and tried to the jury be-

fore *Roraback, J.;* verdict and judgment of guilty, and appeal by the accused for alleged errors in the rulings and charge of the court. *No error.*

The finding states the following facts : The indictment charged the defendant with the murder of one Sarah C. King in the perpetration of the crime of rape. Upon the trial the State offered, as a declaration of the accused made on November 12th, 1899, the following statement signed by him : " Statement of Charles Bertram Cross made to J. W. Rogers, Sunday evening, November 12th, 1899, at Stamford, Conn. I make it of my own free will.

" My name is Charles Bertram Cross. I am 17 years of age, and reside with my grandparents at Prospect Hill, Brooklyn. I have been in the employ of Mrs. Sarah King at the farms since June 1st, 1899. On Wednesday evening, November 8th, 1899, about 8 o'clock, Mrs. King and I sat down to supper. While eating supper I got passionate feeling, as though I should like to have something to do with a woman. About 20 minutes to 9 she said she was going to bed. Then I went up stairs and hid around until she came up. She came up in a few minutes, and as she was about to enter her room I pushed her and she fell on the floor. She started to holler, and I grabbed her by the head and pounded her head on the floor until she became unconscious. I am not sure, but I think I tore all her clothes off, and then I raped her until I satisfied my passion, after which I threw a blanket over her and ran to Mr. Merritt and told him I believed some one murdered Mrs. King. I did not pull any drawers out; I had no time to do it. I did not intend to kill Mrs. King. I must have been crazy when I done it. I did not use any weapon of any kind. I simply knocked her down and pounded her head on the floor. She died while I was away to the doctor's. I picked her up off the floor and placed her in the bed where I raped her.

" My former statements were false, I have read this carefully and it is true.

" This is my confession.

" C. B. CROSS."

The State also offered another statement of similar character, but more in detail, made the following day. Before offering said statements the State had offered evidence, including proof of the autopsy of Mrs. King and statements and conduct of the accused on the evening of the murder, to prove that Mrs. King had been raped and murdered as alleged, and that the accused had committed the crime.

The defendant objected to the admissibility of these statements, and at his request the jury were dismissed and evidence was received by the court as to whether the declarations were voluntary. The detective to whom the statements were made, the bailiff who had the prisoner in charge, the accused himself and the counsel for the accused who was conducting the defense, testified. The testimony was conflicting. It appeared during the testimony that the accused was arrested on the night of the killing and remained in Mrs. King's house until the next morning, when he was taken to the office of the deputy-sheriff in Stamford, where he was kept five or six days. During this time no one was allowed to see him except his counsel, and that but once — the afternoon he came to Stamford. His counsel made several applications to have an interview with him, but was denied the privilege until he had obtained permission from Mr. Fessenden, the State's Attorney. His attorney was not able to find Mr. Fessenden until the following Monday, when permission was at once given to see the prisoner.

After hearing all the testimony the court found that the declarations were made by the defendant freely and voluntarily, and that he was not induced to make them by any threats, promises, or inducements, made to him by any one; and admitted the declarations in evidence. Counsel for defendant duly excepted.

After this and during the examination of the detective before the jury, objection was again taken that the story told showed there was intimidation which ought to bar the declarations, but the court allowed the same to go to the jury with all the facts and circumstances; to be given such weight as the jury should deem them to merit.

Afterwards the State introduced declarations subsequently made to deputy-sheriff Miller. The defense objected, on the ground that since a written declaration had been admitted an oral one could not be received. The testimony was admitted and defendant excepted.

Afterwards the State offered the testimony of one E. Z. Fallon, without objection by the defendant, that the defendant had stated to him that he had killed Mrs. King, that he had confessed to the fact, and had so confessed because he thought there was no use lying about it any longer.

The defendant offered no defense except that of insanity. He did not take the stand himself, but offered the testimony of relatives and medical experts that he was insane.

The State offered in rebuttal one Samuel B. Mead, as a non-expert witness, to show that the accused was sane. The witness testified that he had been acquainted with the accused from last June until the time of his arrest; that he had seen him probably every week and sometimes three or four times a week; that he had worked with him getting in hay; that he had talked with him on farming in general, and about their work. The defendant objected that such testimony did not lay sufficient foundation to take the opinion of the witness as to the sanity of the accused. The court admitted the opinion and the defendant excepted.

The State then introduced in rebuttal several other non-expert witnesses, and also medical experts.

The defendant requested the court to charge that if the killing of Mrs. King was not intended by the accused, but was occasioned simply by striking her head on the floor for the purpose of keeping her quiet, such manner of killing would not imply malice and the killing would not be murder; and that if the killing took place in this manner, such killing would not be murder in the first degree, even though the accused was attempting to rape the deceased at that time.

The court refused to so charge the jury, but did charge on these points as follows: —

" When an unlawful, unintentional killing of a human be-

ing happens, which is committed in perpetrating or attempting to perpetrate the crime of rape, the killing will be murder and not manslaughter. If the offense would have been murder at common law, then, although there was no intent to take life, the case, if the homicide was committed in the perpetration, or attempted perpetration, of rape, as charged, is murder in the first degree.

"And, gentlemen, if you believe from all the evidence, beyond a reasonable doubt, that the said Sarah C. King was killed with malice aforethought by the defendant, as charged in the indictment, and also that at the time the defendant was perpetrating or attempting to perpetrate the crime of rape, and thereby caused her death, then the accused is guilty of murder in the first degree, if you should find him criminally responsible for such action, although he may not have intended to take the life of Mrs. King."

To this charge and refusal to charge the defendant excepted.

During the selection of the jury, one Andrew B. Curtis was examined on the *voir dire*. He testified that he had formed no opinion about the merits of the case, and could in his opinion act impartially as a juror, and that he would give the prisoner the benefit of every reasonable doubt. He was then examined by counsel for defendant touching his understanding of the duty of the State to prove every allegation beyond a reasonable doubt. After this the counsel asked him: "What do understand by the phrase, the criminal responsibility of the prisoner? *A.* The criminal responsibility of the prisoner? *Q.* Yes, sir. *A.* I don't know as I exactly understand so as to make an answer to that. *Mr. Fessenden.* What is the object of that? It doesn't seem to me — *Mr. Rowell* (interrupting). I will change my question. *Q.* Supposing the court should charge you that the criminal responsibility of a person is not determined solely from the act or nature of the act alone, but that the law takes into consideration the state of his mind when that act was committed, and in some cases says that he was incapa-

ble of committing the crime, or exempts him altogether from liability. From that charge what would you understand?"

The State objected to the last question, and the court sustained the objection. Defendant excepted. Said Curtis was duly accepted as a juror, no objection being made by the defendant to his qualification.

The appeal assigns as error (1) the admission of the declarations of the accused; (2) the refusal of the court to charge as requested, and the charge as made; (3) the admission of the testimony of the witness Mead; and (4) the exclusion of the question to the juror Curtis.

*John P. Chamberlain* and *George P. Rowell*, for the appellant (the accused).

*Galen A. Carter*, Assistant State's Attorney, for the appellee (the State).

HAMERSLEY, J. The trial court, after hearing all the testimony as to the circumstances attending the declarations or admissions of the accused, finds that they were made freely and voluntarily, and that the defendant was not induced to make them by any threats, promises, or inducements made to him by any one. This finding is upon a preliminary question of fact; the conclusion is drawn from conflicting testimony and may be correct or incorrect according to the credit given to witnesses.

We cannot review such a finding. Whether under these circumstances the declarations should have been excluded, on the ground that they were of little weight or liable to be untrue, or that their admission would be on the whole unfair to the prisoner, was a matter of discretion with the trial court, and its exercise is not ground of error unless this court can see plainly that the discretion was abused. In view of all the circumstances detailed at length in the finding of facts, we do not feel justified in saying that the discretion was so abused. This subject is fully considered in the recent case of *State* v. *Willis*, 71 Conn. 293, and that decision governs the present case.

Stress has been laid on the fact that shortly after the prisoner's arrest he retained and had an interview with counsel, and for the following three days the bailiff in charge refused every one (including the counsel) who had not obtained permission of the State's Attorney, access to the prisoner, and that the applications of counsel for a further interview were denied until he was able to find the State's Attorney. The trial court has found that notwithstanding this the declarations were voluntary. This conclusion is not necessarily inconsistent with the evidence; there may have been no relation between the conduct of the bailiff and the voluntary character of the declarations, the inference to be drawn depending largely on the judgment of the court as to the apparent character and credit of witnesses. The action of the bailiff, however, would seem to have been wrong, and to call for investigation from his superior officer. A prisoner before trial is in custody of the law for safe-keeping. The sheriff is responsible for that, and may regulate and limit access of outsiders so far as may be necessary, under the circumstances of each case, to the security of his prisoner and the proper management of the jail; but he should at reasonable times and under reasonable conditions permit the free access of counsel to his client, and this duty may be enforced.

As a general rule, the mere bald admission of guilt resulting from conversations with detectives or officers in charge, is not by itself of controlling weight. The inference that one not guilty of the particular offense charged would not make such an admission under such circumstances, is by no means always clear; the weight and significance of such admission depends on the nature of its connection with the facts proved. The trial court, under our practice, may properly exclude an admission of this kind, if deemed of little weight, although our policy has more recently drifted towards a larger trust in the jury's discrimination in respect to the weight of relevant testimony, as in the case of parties in interest. Possibly in the present case the court might properly have excluded the fact that the accused had made these declarations, as under all the circumstances entitled to no

State *v.* Cross.

very great weight, and unfair to the prisoner; although in truth the conduct of the accused as thus shown rather tended to prove his main contention—that of insanity. But the power of the trial court in the reasonable exercise of its discretion to submit to the jury the weight of such relevant conduct, with all its attendant infirmities, is clear, and its action is not a reviewable error.

There is no error in the charge. The meaning of our statute defining murder in the first degree, as enacted in 1846, has not been changed by subsequent legislation. It does not define a new crime, nor in any way affect the definition of the crime of murder as it before existed; it simply sets forth the circumstances attending the crime which must determine the punishment of murder, whether it shall be death or imprisonment for life. *State* v. *Dowd,* 19 Conn. 388.

The common-law murder is deemed murder in the first degree, when perpetrated in the commission of the crime of rape. By our common law an unlawful homicide perpetrated in the commission of another crime of the nature of felony, is murder; if that other crime is rape, the statute deems the murder to be in the first degree. The Act says, in substance, that murder with express malice is murder in the first degree, but with implied malice is murder in the second degree, except those enumerated cases of murder with implied malice which are expressly made murder in the first degree. *Smith* v. *State,* 50 Conn. 193, 197 ; *State* v. *Hamlin,* 47 id. 95. The construction contended for in behalf of the defendant is strained, and inconsistent with the evident purpose of the Act. The passage cited from Dr. Wharton's work on criminal law, indicating a different view, is not applicable to our statute, under our decisions.

The admission of the testimony of the witness Mead is not error. He had stated the time he had known the prisoner, the frequency and nature of his interviews and the topics of their conversations ; under these circumstances the court might admit his opinion—based on his knowledge and acquaintance as detailed—that the accused was of sound mind. *Dunham's Appeal,* 27 Conn. 192, 198 ; *Sydleman* v. *Beck-*

State *v.* Cross.

*with,* 43 id. 9, 13; *Shanley's Appeal,* 62 id. 325, 330; *Chamberlain* v. *Platt,* 68 id. 126, 130.

The exclusion of the inconsequential question put to the juror Curtis, is not error. Undoubtedly a party may question jurors for the purpose of obtaining information necessary to the intelligent use of his right of peremptory challenge; but the questions must be pertinent and proper for testing their capacity and competency, and the trial court has some control over the character and extent of such examinations.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.