## State of Connecticut *v.* Joseph Edwards, Jr.

House, C. J., Ryan, Shapiro, Loiselle and MacDonald, Js.

Argued June 14—decided July 27, 1972

*Dominick J. Galluzzo,* assistant public defender, for the appellant (defendant).

*Joseph T. Gormley, Jr.,* state's attorney, for the appellee (state).

LOISELLE, J.  The defendant, Joseph Edwards, Jr., was indicted by a grand jury for the crime of murder in the first degree in that he "wilfully, deliberately with premeditation and malice aforethought and while in the perpetration of a robbery, did assault, stab and kill one Wilbert Nails in violation of Section 53-9 of the Connecticut General Statutes."  A jury returned a verdict of guilty of murder in the first degree.  After a hearing in accordance with the provisions of General Statutes § 53-10, the jury recommended a sentence of life imprisonment, which the court imposed.[1]  The defendant has appealed, assigning error in the court's charge to the jury and in the court's refusal to charge as requested.  These assignments of error are tested by the claims of proof as they appear in the finding.  Practice Book §§ 609, 635; *Southington* v. *Francis,* 159 Conn. 64, 68, 266 A.2d 387; *Intelisano* v. *Greenwell,* 155 Conn. 436, 444, 232 A.2d 490.

The defendant offered no evidence and does not claim to have proved any facts.  The state's claims of proof may be summarized as follows:  At ap-

[1] Since the time that this case was argued, the Supreme Court of the United States has decided the case of *Furman* v. *Georgia,* 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346, involving the death penalty in state statutes.  As the sentence in the case before us was of life imprisonment, the ruling in the *Furman* case does not apply.

proximately 8:30 p.m. on the evening of December 3, 1969, Wilbert Nails entered the New Breed Restaurant on Day Street in the city of Norwalk and remained there until about 11:30 p.m. That evening the defendant, William Jacobs and Raymond Conner stopped at the New Breed Restaurant for about fifteen minutes. The defendant left the restaurant with Nails and then came back into the restaurant and called for Conner and Jacobs. The defendant, Conner, Jacobs and Nails crossed Concord Street, passed in front of a factory and proceeded into the alley next to the factory. The defendant preceded Nails, whom Conner and Jacobs followed. The defendant then struck Nails, jumped on him and demanded his money. Nails said he had no money. Jacobs tried to pull the defendant from Nails, but the defendant pulled a knife out of a zippered pocket on the sleeve of his coat and began swinging it. While Conner was trying to pick up Nails, Jacobs left the scene. Both Jacobs and Conner saw the defendant swinging the knife at Nails. Conner saw the defendant hitting and stabbing Nails. After the stabbing, the defendant took some money in coins from Nails and gave it to Conner. Conner and the defendant then left the area to go to the home of the defendant's sister. At his sister's home, the defendant took out the knife, held it up and said that he had tried to kill Nails, describing Nails by an obscenity rather than by his name. The defendant gave the knife to Conner and told him to wash the blood from it. Nails was found dead in the alley next to the factory at approximately 12:36 a.m. on December 4, 1969. The cause of death was multiple stab wounds of the chest, one of which penetrated the chest wall and the heart. On the following day, Conner delivered the knife used to kill Nails to the

Norwalk police department. At the Norwalk police department on the evening of December 6, 1969, after being advised of his rights, the defendant admitted being in the New Breed Restaurant on the evening of December 3, 1969, getting into an argument with a man, going outside and hitting him, and then taking a knife from a zippered pocket in the sleeve of his coat and stabbing him.

In its charge, the court read verbatim the indictment as it had been received from the grand jury. After the preliminary instructions usual to a criminal proceeding, it detailed the four elements essential to the proof of murder. It then charged the jury that, to find the defendant guilty of murder in the first degree, they must find that the state had proved a fifth element. The court specified two circumstances which would constitute that fifth element: If the state established the four elements comprising murder and "also that the killing was wilful, deliberate and premeditated . . . then the crime would be murder in the first degree"; "if in addition to those four elements the state also proves a fifth element, namely, that the murder was committed in the perpetration of robbery as alleged in the indictment, it becomes by force of law murder in the first degree. The fact that the murder is committed in the commission of a robbery makes it murder in the first degree by statutory definition. A further specific finding that it was done wilfully, deliberately and with premeditation is not required under this phase of the statute which I have read to you." The court also stated: "[I]n reviewing up to this point, if the State has failed to prove beyond a reasonable doubt any of the five elements in each instance that I have described and thus has failed to prove that the murder was a wilful, deliberate and premeditated

killing or has failed to prove that a murder was committed in the perpetration of a robbery, then your conclusion is that the State has failed to make out a case of murder in the first degree."

Near the end of the charge, the court again emphasized that, if the jury found that the state had proved the four essential elements comprising murder, and found either that the murder was willful, deliberate and premeditated or that it occurred while in the perpetration of a robbery, the defendant would be guilty of murder in the first degree. The court substantially repeated these directions when the jury returned for further instructions.

The defendant claims that the court's instruction was in effect an amendment or alteration of the grand jury indictment; that the jury charge was erroneous because it charged two distinct and separate offenses in one count; that the indictment and jury charge failed to inform the accused with sufficient certainty of the crime for which he was convicted; and that the jury charge failed to give the jury sufficiently clear instructions with which to weigh the evidence and reach a verdict.

At common law, an indictment could be amended only by the grand jury. *Merriam* v. *Langdon,* 10 Conn. 460, 471; note, 17 A.L.R.3d 1181, 1201; see also *Ex parte Bain,* 121 U.S. 1, 7 S. Ct. 781, 30 L. Ed. 849, *Dodge* v. *United States,* 258 F. 300 (2d Cir.), for the same rule in federal cases. The defendant has briefed innumerable cases on the subject and all support this principle. They are not applicable, however, to this case because the court read the indictment returned by the grand jury verbatim to the jury and the jury had the unaltered indictment with them during their deliberations. While the defendant admits that the indictment was not physically

amended, he claims that the charge of the court effectively altered the indictment. This claim runs through the remaining assignments of error and will be discussed as applicable to each.

The defendant's claim that the indictment charges two distinct and separate offenses in one count is not well-founded. General Statutes § 53-9 defines murder committed in specific, enumerated ways as murder in the first degree and provides that murder committed in all other ways shall be murder in the second degree. Committing a single murder in one or all of the ways enumerated constitutes no more than a single offense of murder in the first degree. To say that one may commit a particular crime in any of several ways is certainly not to say that he has committed several crimes.

There is, therefore, no merit in the defendant's claim that first-degree murder, committed during the perpetration of a robbery, constitutes an offense which is different from first-degree murder committed in a willful, deliberate and premeditated fashion. At common law, murder is the unlawful killing of one human being by another with malice aforethought; *State* v. *McGuire,* 84 Conn. 470, 481, 80 A. 761; and includes homicide which is committed without an intent to kill, if it occurs in the prosecution of a felonious intention. 2 Swift, Digest, p. 278. Thus, by our common law, an unlawful killing which is either willful, deliberate and premeditated or perpetrated in the commission of a felony is murder. See *State* v. *Cross,* 72 Conn. 722, 729, 46 A. 148. Prior to 1846, Connecticut did not distinguish among the various ways of committing murder for the purpose of imposing varying punishments. See *State* v. *Dowd,* 19 Conn. 388, 391. The pre-1846 common law demonstrates that the courts viewed these alterna-

tive ways of committing murder as constituting a single crime, calling for a single punishment.

Chapter 16 of the Public Acts of 1846 provided that the punishment for murder should differ according to the atrociousness of the manner in which it was committed. *Smith* v. *State,* 50 Conn. 193, 196; *State* v. *Dowd,* supra, 392. It did not, however, alter or expand the conduct which constituted murder at common law. *State* v. *Walters,* 145 Conn. 60, 71, 138 A.2d 786, cert. denied, 358 U.S. 46, 79 S. Ct. 70, 3 L. Ed. 2d 45; *State* v. *Kurz,* 131 Conn. 54, 61, 37 A.2d 808; *State* v. *Jacowitz,* 128 Conn. 40, 44, 20 A.2d 470. Killing willfully, deliberately and with premeditation, and killing in the perpetration of a robbery, are among the ways of committing murder which were designated first-degree murder and subject to more stringent punishment than other methods. There is, therefore, no basis to the defendant's claim that he was indicted for two distinct and separate offenses in one count. He was indicted only for the single offense of first-degree murder. The state offered evidence of a robbery, as well as evidence of willfulness, deliberateness and premeditation, only to support its claim that the murder committed was first-degree murder. *People* v. *Jackson,* 20 N.Y.2d 440, 450, 231 N.E.2d 722; *People* v. *Lytton,* 257 N.Y. 310, 178 N.E. 290; see also *McGuigan* v. *State,* 281 A.2d 480 (Del.).

The defendant also claims that the indictment and charge to the jury failed to inform him of the exact nature of the offense with which he was charged. The indictment clearly stated that the defendant was charged with first-degree murder. It thus complied with the requirements of § 493 of the Practice Book in that it charged only one crime and stated conjunctively the two ways in which it was committed, i.e.,

willfully, deliberately and with premeditation; and in the perpetration of a robbery. Charging, in the conjunctive, two alternative theories which characterize the single act of the defendant as first-degree murder does not make the indictment defective. *United States* v. *Conti,* 361 F.2d 153, 159 (2d Cir.), vacated on other grounds sub nom. *Stone* v. *United States,* 390 U.S. 204, 205, 88 S. Ct. 899, 19 L. Ed. 2d 1035; *State* v. *Golladay,* 78 Wash. 2d 121, 470 P.2d 191; 4 Wharton, Criminal Law and Procedure § 1798; 41 Am. Jur. 2d, Indictments and Informations, § 96. The defendant correctly contends that an indictment may not charge in the alternative because the accused has a right to know the exact offense for which he is to be tried. *Smith* v. *State,* 19 Conn. 493, 500. The indictment in this case, however, contained an explicit statement of the crime charged and stated facts essential to its proof. Under these circumstances, the defendant cannot complain that he did not know the nature of the offense with which he was charged. See *Grasso* v. *Frattolillo,* 111 Conn. 209, 212, 149 A. 838.

The defendant also argues that the court in effect amended the indictment by charging that the jury could find him guilty of first-degree murder if they found that he had committed the murder either willfully, deliberately and with premeditation or in the course of a robbery, thus creating ambiguity as to the exact crime with which he was charged. It is the defendant's position that, since the indictment was a single count charging conjunctively, the jury should have been instructed that he was guilty of first-degree murder only if the murder was committed in the perpetration of a robbery and was willful, deliberate and premeditated.

The indictment charged only one offense and the

court's instructions neither altered that fact nor introduced any ambiguity as to what that offense was. From the indictment through the conclusion of the court's charge, it remained clear and constant that the defendant was charged only with one count of first-degree murder.

The defendant's claim that the court improperly charged that proof of either of the alternative ways of committing murder charged by the state would establish first-degree murder cannot be sustained. The case of *Smith* v. *State,* 19 Conn. 493, relied on by the defendant, is not controlling on this issue. In that case the defendant was charged in one count with several, different offenses. In the case at bar, the defendant, as indicated, was charged only with murder in the first degree. In *State* v. *Falk,* 66 Conn. 250, 256, 33 A. 913, which involves a comparable situation, the defendant was charged in one count with one offense: "the keeping of . . . one place . . . for the purpose of recording and registering bets and wagers, and (for the purpose) of buying and selling pools." Keeping a place for either of these purposes was prohibited. The court, in *State* v. *Falk,* supra, noted that the defendant was charged with only one act—the keeping of a place associated with gambling. That this act could be established in either of two ways did not charge two offenses. Proof that the act occurred in either way, or both ways, shows that the single crime charged was committed. See *State* v. *De Ladson,* 66 Conn. 7, 9, 33 A. 531. The trial judge was not in error in directing the jury that the defendant was guilty of first-degree murder if they believed beyond a reasonable doubt that he had committed murder in either of the two ways advanced by the state. It is noteworthy that in *State* v. *Feltovic,* 110 Conn. 303, 307,

147 A. 801, this court made no mention of any necessity for charging on willful, deliberate and premeditated murder in addition to murder committed in perpetrating a robbery, although the indictment in that case, like the one in this case, charged both in the conjunctive. 368 Rec. & Briefs 2049. In this case the defendant was not prejudiced by the indictment or the charge. The indictment was sufficient to apprise him of the state's intention to produce evidence both as to willfulness, deliberateness and premeditation, and the commission of a robbery. The court's charge correctly instructed that proof of either willfulness, deliberateness and premeditation or the commission of a robbery accompanying the murder would call for the defendant's conviction of murder in the first degree. *State* v. *Falk,* supra; see *United States* v. *Conti,* supra; *State* v. *Golladay,* supra.

The defendant's final assignment of error is that the charge to the jury was confusing and unclear. The instructions in question are an almost verbatim recital of the statute. The jurors were clearly instructed to render a verdict of guilty of murder in the first degree only if they found that the defendant committed murder in either of the two ways which the state asserted. Although not expressly stated, the court clearly instructed the jury that they must be unanimous in their finding as to the particular way, or ways, in which the defendant committed murder. The jury could not have been confused in this regard. The trial court's response to the question asked by a juror was also clear and unambiguous. "Of necessity, additional instructions given in immediate response to a request are more informal and expressed with less exactness than are studiously prepared formal charges." *State* v. *Parker,* 114 Conn. 354, 368, 158 A. 797. The trial court's answer

in this case, however, was articulate and correct in rephrasing the main point of the earlier charge. The main charge and the supplemental instructions are to be read and considered as a whole. *DePaola* v. *Seamour,* 163 Conn. 246, 253, 303 A.2d 737; *Hanken* v. *Buckley Bros., Inc.,* 159 Conn. 438, 442, 270 A.2d 556; *State* v. *Johnson,* 139 Conn. 89, 93, 90 A.2d 905. The test to be applied to the charge is whether it fairly presents the case to the jury. *Amato* v. *Sawicki,* 159 Conn. 490, 494, 271 A.2d 80. Viewed in the light of these tests, the court's charge correctly stated the law and adequately instructed the jury by providing a clear understanding of the issues and guidance in deciding them.

There is no error.

In this opinion the other judges concurred.