## COURT OF APPEALS,
### Dec. 18, 1908.

## THE PEOPLE v. SALVATORE GOVERNALE.

(193 N. Y. 581.)

(1). MURDER IN FIRST DEGREE—DYING DECLARATIONS.

In order to constitute murder in the first degree, it is not necessary that a person should deliberate and premeditate upon his design to effect the death of another for any specified period of time. A statement made by a person mortally wounded, who appreciated that recovery was impossible, and that his death was imminent, and who died shortly after such statement was made, is admissible as a dying declaration.

(2). EVIDENCE OF AN INDEPENDENT CRIME, WHEN ADMISSIBLE.

It is the general rule that evidence of a crime, which is distinct and independent of the one for which the defendant stands indicted, cannot. be received on his trial. This rule is not applicable, however, where,. although the crimes are independent, one has a distinct relation to and bearing upon the facts .connected with the other. Evidence was. admitted of an act of defendant, which might have been found to be a felony, which act preceded by a very few minutes the shooting of a police officer, who was attempting to arrest him, for which latter crime defendant was on trial. Defendant claimed that he fired the shot, by which the policeman was killed, in self-defense. The court charged that evidence of the previous act was admitted solely for the purpose of showing that a felony had been committed and that the defendant was liable to arrest therefor as bearing upon his motive when he fired upon the officer, and for no other purpose. *Held*, no error.

APPEAL from a judgment of the Court of General Sessions of the Peace in the county of New York rendered June 21, 1907, upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*Charles E. Le Barbier,* for appellant. The defendant did not have a fair and impartial trial according to the law of the land.

*Wood v. People,* 53 N. Y. 511; *People v. Sharp,* 107 N. Y. 427; *People v. Dimick,* 107 N. Y. 13; *People v. Molineux,* 168 N. Y. 264; *People v. Peckens,* 153 N. Y. 576; *People v. Flannigan,* 174 N. Y 357; *People v. Huter,* 184 N. Y. 237; *Wyckoff v. Woams,* 118 App. Div. 705; *People v. Spier,* 120 App. Div. 786; *People v. Nelson,* 189 N. Y. 141. In making the alleged felony in the park an issue in the case the court committed reversible error in receiving it for any purpose. *People v. Dixon,* 118 App. Div. 595; *Ferrari v. I. S. R. Co.,* 118 App. Div. 159; 1 Bishop on Crim. Pro., § 1120; *Shaffner v. Comm.,* 72 Penn. St. 60; *Yates v. People,* 32 N. Y. 509; *People v. Huter,* 184 N. Y. 237; *People v. Young,* 40 Misc. Rep. 256. It was error to permit the reception in evidence of a statement made by the defendant after arrest. *People v. Priori,* 164 N. Y. 466; *People v. Cahill,* 126 App. Div. 398; *People ex rel. Taylor v. Forbes,* 143 N. Y. 219.

*William Travers Jerome, District Attorney (Robert C. Taylor,* of counsel), for respondent. The evidence showed murder in the first degree. *People v. Conroy,* 97 N. Y. 62; *People v. Giblin,* 115 N. Y. 196; *People v. Sullivan,* 173 N. Y. 122; *People v. Huter,* 184 N. Y. 237; *Darry v. People,* 10 N. Y. 120; *People v. Schmidt,* 168 N. Y 568; *People v. Zachello,* 168 N. Y. 35; *People v. Slincy,* 137 N. Y. 570; *Leighton v. People,* 88 N. Y. 117; *People v. Majone,* 91 N. Y. 211. The evidence of the prior shooting in the park was admissible. *People v. Pallister,* 138 N. Y. 601; *People v. Parker,* 137 N. Y. 535; *People v. Molineux,* 168 N. Y. 264; *People v. Buddensieck,* 103 N. Y. 487; *People v. Lewis,* 9 N. Y. Cr. Rep. 340; *People v. Scott,* 153 N. Y. 40. The defendant's statement made after arrest was properly admitted. *People v. Strollo,* 191 N. Y. 42. The admission of the dying declaration was proper. *People v. Del Vermo,* 192 N. Y. 470, 23 N. Y. Crim. Rep. 1; *People v. Scott,* 153 N. Y. 40.

CHASE, J.:

The defendant was indicted for the crime of murder in the first degree. On the trial he was sworn as a witness in his own behalf, and testified that he shot George M. Sechler while in the hallway hereinafter mentioned. He further testified, " I fired to kill."

On Sunday afternoon, April 14, 1907, about 5:45 o'clock, two young Italian men entered a small building maintained as a urinal near the south end of Washington Square park, in the city of New York. The defendant and his brother were then in the building, but the defendant's brother had started to leave the building as the young men entered, and one of the young men accidentally "bumped against him," whereupon a quarrel ensued and defendant's brother backed the young man against an iron railing. The defendant passed out of the building and ten or twenty feet from the entrance thereof and stood on a grass plot near some shrubbery. The companion of the young man who had been pushed against the railing went to his assistance and after some fighting all came out of the building; the two young men mentioned were leading, and the defendant's brother was a short distance behind them. As the young men turned in the direction where the defendant was standing he immediately fired a revolver three times in the direction of the young men, one shot from which entered the left leg of the young man that had been to the aid of his companion. As the young man who was shot staggered back, the defendant's brother ran up Fifth avenue and the defendant placed his revolver in his pocket and ran across the lawn to and across Fourth street and down Thompson street. One Fogarty, a lieutenant of the New York police force, then in plain clothes, was about one hundred yards north of where the firing took place. He heard the shots and turned in the direction of the noise and saw the defendant turn and run and he followed him. Several persons in the park followed and the crowd increased

as they went south.    Fogarty called out, "Stop that man."
About fifty feet north of Third street, Sellick, a patrolman on
duty in plain clothes, attempted to stop the defendant.    Defend-
ant was then running in the middle of the street, and to avoid
Sellick he ran upon the sidewalk and jumped over an open
cellar way and passed Sellick.    Sellick turned and followed
him.    At about Third street Sechler, a patrolman on duty in
plain clothes, attempted to stop the defendant and failed to do
so.    Sechler immediately turned and followed the defendant.
The crowd increased in numbers and at 232 Thompson street
the defendant ran into a hallway.    Sellick and Sechler followed
him.    The hall extends back about twenty-one feet from the street
entrance and then turns to the left at a right angle to a stair-
way commencing six feet from the angle.    There is a passage-
way along the right-hand side of the stairway leading to a door
which opens into a yard or court.    The defendant stopped by
the stairway.    The hallway was quite dark except that the
defendant, looking from the interior thereof toward the open
doorway, could see his pursuers at the street.    When Sellick
and Sechler approached within seven or eight paces of the de-
fendant, he shot them both, the shots being fired in rapid suc-
cession.    Sellick fell, but Sechler ran to and grabbed the de-
fendant, not appreciating that he had been mortally wounded.
Fogarty followed, and Sechler and Fogarty took the defendant
to the doorway when Sechler exclaimed, "God, I'm shot."    Help
was obtained for Sechler, and he was taken to a hospital, where
he died about ten-thirty that evening.

Number 232 Thompson street is about five hundred and fifty
feet from where the shooting took place in the park.    The
defendant in his testimony says that his brother's assailants
during the quarrel fired two shots and that "Because they were
beating my brother I fired two shots and then I ran."    He fur-
ther said the shots fired by him in the park were fired at the

ground to scare his brother's assailants and not at any particu-
lar person and that he ran away to save himself. The young
men in the park each testified that he did not have a revolver.
The defendant did not produce his brother as a witness nor ex-
plain his absence.

In explanation of the shots fired in the hallway defendant
says that he supposed the people that followed him were friends
of the young men in the park that had the altercation with his
brother, and that both of the men who entered the hallway had
revolvers in their hands, and one of them fired at him, and that
he fired to kill because they fired at him. No one heard more
than two shots in the hallway, and after the shooting the revolver
taken from Sellick, which was a five-shooter, contained four
unexploded shells and one empty chamber. It did not contain
an exploded shell. The revolver taken from the deceased was
a five-shooter and contained five unexploded shells. The jury
could have found that the defendant testified falsely in saying
that either Sellick or Sechler fired at him. The defendant's
revolver was a five-shooter and contained five exploded shells.
So far as the testimony taken on the trial is in conflict with that
given by the People it was such that the jury could have be-
lieved and they probably did believe the People's testimony
as against that given by the defendant and the witnesses pro-
duced on his behalf.

The testimony offered on behalf of the People, supplemented
by the admissions of the plaintiff, prove beyond controversy
that the defendant shot and killed Sechler, and that he intended
to kill him. It was necessary for the jury to determine two
important and seriously controverted questions, viz.: 1. Did the
defendant shoot Sechler with a deliberate and premeditated
design to effect his death? 2. Did the defendant shoot Sechler
in the lawful defense of himself? The jury determined these
questions against the defendant.

The defendant's principal contention on this appeal is that

the trial court erred in allowing testimony of what occurred in the park to be received and considered by the jury in determining whether the defendant was guilty of the crime of murder in the first degree.

It is a general rule that evidence of a crime which is distinct and independent of the one of which the defendant stands indicted cannot be received on his trial. The commission of one crime is not in itself any evidence to be considered by a jury in determining a defendant's guilt of another crime in no way connected therewith. A person cannot be convicted of one offense upon proof that he committed another, however persuasive in a moral point of view such evidence may be. It would be easier to believe a person guilty of one crime if it was known that he had committed another of a similar character, or, indeed, of any character; but the injustice of such a rule in courts of justice is apparent. It would lead to convictions, upon the particular charge made, by proof of other acts in no way connected with it, and to uniting evidenc of several offenses to produce conviction for a single one. *Coleman v. People,* 55 N. Y. 81; *People v. Molineux,* 168 N. Y. 264, 16 N. Y. Crim. 120.

Evidence of the occurrences in the park was not proper to be considered by the jury in determining whether the defendant shot Sechler, neither was it proper for their consideration for the purpose of determining that the shooting of Sechler was done by the defendant while engaged in the commission of a felony in the park. The shooting in the park was an independent crime. *People v. Huter,* 184 N. Y. 237, 20 N. Y. Crim. 237. There are exceptions to the general rule excluding all evidence of crimes alleged to have been committed by a defendant other than the one for which he is being tried. *People v. Molineux, supra.* The important questions for the jury in this case were the two that we have hereinbefore enumerated. The occurrences disclosed in the record beginning at a time when the shots were fired in the park and ending with the defendant's arrest include but

a very few minutes of time, and they all have a distinct relation to and bearing upon the defendant's apprehension of great personal injury by his pursuers and upon his intent in shooting Sechler. A private person as well as a peace officer may without a warrant arrest a person for a crime committed in his presence, and when the person arrested has committed a felony, although not in his presence. Code Criminal Procedure, sec. 183.

If the defendant committed a felony in the park any of the persons present or those that followed him had express statutory authority to arrest him. Even the statutory requirement that before making an arrest a private person must inform the person to be arrested of the cause thereof and require him to submit, does not apply to the case where a person arrested is in the actual commission of the crime or is arrested on pursuit immediately after its commission. Code Criminal Procedure, sec. 184. The intent and purpose of the defendant's pursuers and their rights in regard to interfering with the defendant were very material. If the defendant was wholly innocent of any crime and not liable to arrest and he was pursued by a mob intent upon taking his life or of doing him great personal injury his rights in self-defense would have been entirely different from what they were as a criminal fleeing from justice. It was material, therefore, to show the occasion for the defendant's fleeing from the park and the purpose of his pursuers or some of them in following him into the hallway.

The defendant's right to defend himself is stated in section 205 of the Penal Code, which says: "Homicide is also justifiable when committed, either, 1. In the lawful defense of the slayer, * * * when there is reasonable ground to apprehend a design on the part of the person slain * * * to do some great personal injury to the slayer * * * and there is imminent danger of such design being accomplished; * * * ."

Any person committing violence in his personal defense must not only believe that he is in danger of personal violence, but he

must in fact have reasonable ground to apprehend that he is in imminent danger.

When one who is without fault himself is attacked by another in such a manner or under such circumstances as to furnish reasonable ground for apprehending a design to take away his life or do him some great bodily harm and there is reasonable ground for believing the danger imminent that such design will be accomplished, he may safely act upon appearances and kill the assailant if that be necessary to avoid the apprehended danger, and the killing will be justifiable although it may afterwards turn out that the appearances were false, and there was in fact neither design to do him serious injury nor danger that it would be done. *Shorter v. People,* 2 N. Y. 193; *People v. Taylor,* 177 N. Y. 37, 18 N. Y. Crim. 92.

The jury could have found that the defendant committed a crime amounting to a felony in the park. The defendant was, therefore, not without fault on his part. Had he any reasonable ground under the circumstances disclosed to apprehend that Sechler designed to do some great personal injury to him, and that there was imminent danger of such design being accomplished? If the defendant had committed a crime in the park amounting to a felony, he knew that he was subject to arrest. The jury could have found that the defendant stated subsequent to his arrest that he was running away because he had shot somebody in the park and did not want to be arrested. His pursuers at no time shouted any words of menace. He heard them calling out, "Catch him, catch him," and others shouted, "Stop that man." It is shown beyond controversy that his pursuers did not desire to kill or injure him, but to arrest him. The defendant testified that he thought his pursuers and those that followed him into the hallway were friends of his brother's assailants determined upon doing him personal injury. One of his brother's assailants had staggered back at the time that he was shot by the defendant, and his companion remained with

him. It does not appear that the defendant saw any friends of his brother's assailants in the park. Sechler and Sellick were on Thompson street, more than a block away from the scene of the occurrences in the park. Defendant by special effort dodged them in the street in running toward the hallway, and they were the two that first entered the hallway following him. The jury could have found from this testimony that the defendant ran from the park and, into the hallway to avoid arrest, and that at the time he shot Sechler there was no reasonable ground to apprehend a design on the part of Sechler to do the. defendant great, or any, personal injury. The question as to whether the defendant in shooting Sechler was acting in self-defense was clearly one for the jury. *People v. Constantino,* 153 N. Y. 24, 12 N. Y. Crim. 339; *People v. Filippelli,* 173 N. Y. 509; *People v. Rodawald,* 177 N. Y. 408, 18 N. Y. Crim. 142; *People v. Broncado,* 188 N. Y. 150, 21 N. Y. Crim. 84.

The jury were in no way misled or confused by the testimony of what occurred in the park. The reason for admitting such testimony was stated by the court from time to time as it was received, and in the charge to the jury the court say: "I have allowed the People to prove that the defendant discharged a loaded firearm at a human being in Washington Park for the purpose of showing that a felony had been committed and that the defendant was liable to an arrest if such a crime had been committed by him. The People claim that the evidence is material for the purpose of showing the motive and the intent of the defendant at the time that he was endeavoring to escape arrest. That is to say, that he intended to shoot any person who attempted to prevent his escape. It was not admitted for the purpose of proving this defendant guilty of the particular crime charged so that act should militate against him upon this charge, but it was admitted for the purpose indicated by me and for no other purpose."

It is not necessary to constitute murder in the

first degree that a person should deliberate and premeditate upon his design to effect the death of another for any specified period of time. The defendant had evaded capture by running five hundred and fifty feet. From his own testimony it appears that he chose his position behind the angle in the hallway and near the staircase and afterwards took his revolver from his pocket. Assuming that the defendant did not decide to shoot and kill his pursuers until he stopped in the hallway, there was time for him, though brief, to deliberate and meditate upon his design after he concluded to stop and while he removed the revolver from his pocket and in his deliberately aiming for the purpose and with the intent of killing Sechler. *Leighton v. People,* 88 N. Y. 117; *People v. Majone,* 91 N. Y. 211; *People v. Schuyler,* 106 N. Y. 298; *People v. Ferraro,* 161 N. Y. 365, 15 N. Y. Crim. 60; *People v. Boggiano,* 179 N. Y. 267, 18 N. Y. Crim. 509; *People v. Conroy,* 97 N. Y. 62; *People v. Johnson,* 139 N. Y. 358; *People v. Rodawald,* 177 N. Y. 408, 18 N. Y. Crim. 142; *People v. Kennedy,* 159 N. Y. 346, 14 N. Y. Crim. 114; *People v. Del Vermo,* 192 N. Y. 470, 23 N. Y. Crim. 1.

The court, in the charge to the jury, says: "Now if you find from the evidence beyond a reasonable doubt that the defendant realizing that he had fired several shots from a loaded pistol at a human being, and that he was liable to arrest therefor, and that he was endeavoring to escape from a lawful arrest, and that his intention was to kill any person who should attempt to prevent his escape, and that he deliberated and premeditated upon that intent to effect the death of any person pursuing him for the purpose of lawfully arresting him, and that in discharging the loaded pistol at Sechler he did so from a deliberate and premeditated design to effect the death of Sechler, then you may find the defendant guilty of murder in the first degree."

When the commission of a homicide by the person accused has been shown, it is the province of the jury to say from the

facts and circumstances surrounding it, unless they clearly repel the idea of deliberation and premeditation, what the character of the act really·was and the degree of crime which should be attached to it. *People v. Conroy, supra.*

After Sechler arrived at the hospital he made a statement in which he said that he believed that he was about to die and that he had no hope of recovery, and then briefly described the pursuit of the defendant and the shooting by him. Oral testimony of such statement was received subject to objections and an exception by the defendant. When the statement was made, Sechler was mortally wounded. It clearly appears that he appreciated that recovery was impossible and that his death was imminent, and he did in fact die shortly after such statement was made. Such a statement is admissible as a dying declaration. *People v. Del Vermo,* 192 N. Y. 470, 23 N. Y. Crim. Rep. 1. The statement so made by Sechler was given in evidence before it was known that the defendant would take the stand in his own behalf. The defendant as a witness testified to substantially everything related by. Sechler, and the defendant was therefore not prejudiced by Sechler's statement even if it had been improperly received.

During the evening after the shooting the defendant was questioned by an assistant district attorney and his answers were taken by a stenographer with the aid of an interpreter. Before he was questioned he was told that anything that he said could be used against him. There was nothing in his answers materially different from the testimony given by him on the trial, except that in his answers to the assistant district attorney he repeatedly stated that he ran away from the park and into the hallway to avoid arrest, and he did not then assert or claim that any one shot at him in the hallway. Oral evidence of the defendant's statements to the assistant district attorney were given in evidence in rebuttal after the defendant gave his testimony on the trial. No objection was made to

the introduction of such oral evidence, and the stenographer's minutes of the interview were received in evidence after the court, referring to the minutes, said to defendant's counsel: "You make no objection except that you dispute that what is contained in this record was stated by the defendant?" And to which question the defendant's counsel answered: "Yes, sir, that is all."

Other alleged errors are urged by the defendant. A careful examination of the record, however, satisfies us that no error was committed on the trial and that the verdict is supported by the evidence.

The judgment of conviction should be affirmed.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, HAIGHT, WERNER and HISCOCK, JJ., concur.

Judgment of conviction affirmed.