STATE OF CONNECTICUT *vs.* WILLIAM H. DODEZ.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued June 6th—decided June 27th, 1935.

*Harry Silverstone,* with whom, on the brief, was *Robert G. DeForest,* Public Defender, for the appellant (defendant).

*John V. Donnelly,* with whom, on the brief, was *William H. Comley,* for the appellee (the State).

MALTBIE, C. J. The defendant shot and killed Charles E. Farley September 28th, 1934. On this appeal he does not claim that the evidence would not justify a conclusion that he was guilty of murder and

his sole contention is that it could not reasonably be found proven beyond a reasonable doubt that the crime constituted murder in the first degree, because of the lack of sufficient proof that it was wilful, deliberate and premeditated.

The facts involved in the case are clearly stated in the finding made by the trial court at the request of the defendant, and our study of the evidence convinces us that this finding pictures the situation in a light as favorable to the defendant as the court could do upon the basis of the evidence which it could accept. That situation is as follows: The defendant was at the time of the murder sixty-five years old. Having been divorced from his first wife, he married Louise Hastings January 18th, 1918, and until 1928 they lived together happily and he was devoted to her. After 1928 he had only intermittent employment. In March, 1933, his wife instituted an action for divorce upon the ground of adultery and it was granted December 23d, 1933. While the action was pending the defendant made a number of attempts to effect a reconciliation, begging his wife to forgive him and take him back, protesting his devotion to her and threatening suicide. The defendant lost his job, where he was employed as a locomotive engineer, about July, 1934, because his vision had become defective, and thereafter he was destitute, living with a friend who felt sorry for him. After the divorce he continued to call upon his former wife, but at some time not clearly shown, she returned to him a trunk which he had left at their former home, and expressed a wish that he not call upon her so frequently. After this happened and after his final loss of employment, he started to drink heavily and continued to worry about the hopelessness of his situation. He had bought an old revolver, but not being able to obtain cartridges to fit it, on March 14th, 1934, he

exchanged it for a new one, intending to commit suicide, although he never attempted to do so. He often carried this revolver with him. The defendant and his wife had been on very friendly terms with Farley and his wife; the latter had died June 20th, 1933, and on September 15th, 1934, the defendant's former wife married Farley, although the defendant did not know this at the time of the murder. After the institution of the divorce action, the relationship between the defendant and Farley continued to be friendly, but he did have some suspicions that the relations between Farley and his wife were improper. These suspicions, together with brooding over his lack of employment and his impoverishment, produced feelings of hatred against Farley. In the early part of the summer, the defendant on one occasion called Farley a dirty name and told him "I will get you sometime."

On September 27th, 1934, the defendant came to Bridgeport, with the revolver, fully loaded, upon his person. That day he drank considerable whiskey. He passed the night at the home of a friend. The next forenoon he spent walking about the streets. Between twelve and one o'clock he entered a cigar store kept by a man he knew, made a purchase, and asked if the man had seen Farley lately. While he had drunk some beer, he was not intoxicated. Farley left his job in a factory a little before four and went to a tavern nearby. While he was there, the defendant stopped outside and Farley waved to him to enter but he did not do so. Shortly thereafter Farley left the tavern and the defendant joined him. They proceeded to a point where buses stopped, in front of the entrance to the factory where Farley worked, that he might take one, and paused there. The defendant, while they were waiting, greeted a man he knew, asking, "How are you feeling." A bus stopped, Farley went toward it, saying to the

defendant, "Well, here's my bus, Bill." The defendant replied, "You are going as far as you are going with me." He then drew his revolver and shot Farley. The latter turned and ran into the factory, and the defendant shot him again as he was running. Farley ran into a room in the factory, the doorway of which was about fifty feet from the curb of the street. He sank to the floor, and the defendant, having followed him, shot him a third time. Farley was unarmed and there had been no act of aggression upon his part. The defendant was not intoxicated at the time. The defendant left the building after the crime, walked to a nearby tavern and ordered a drink. He was arrested there.

To determine the claim of the defendant that upon all the evidence the trial court could not have reasonably reached the conclusion that he was guilty of the crime of murder in the first degree we must look beyond the finding to the evidence. *State* v. *Frost,* 105 Conn. 326, 332, 135 Atl. 466. The finding, however, serves the purpose of showing the conclusions reached by the trial court from conflicting evidence, as to facts it has found or statements it was requested but refused to find; and as it is for the trial court to pass upon the weight and credibility of the evidence, these conclusions, if reasonably reached, must be accepted. Much of the argument of the defendant before us loses force because it is based upon claims of proof that the trial court evidently did not accept. We find nothing in the evidence upon the basis of which we can add to the trial court's statement of the situation any facts which could have affected the conclusions it reached that, beyond a reasonable doubt, the murder was wilful, deliberate and premeditated, or which would enable us to hold it could not reasonably reach that conclusion.

The defendant relies largely upon the contention that his mental condition, induced by despondency over the loss of his wife's affections, his loss of employment due to his defective eyesight, his feeling of hopelessness, and the impairment of his mental and emotional faculties by the heavy drinking in which he had indulged, preclude a conclusion that his act was wilful, deliberate and premeditated. It may well be that his faculties were clouded, his judgment impaired, and his control over his emotion and his conduct weakened. The undoubted stress under which he was laboring might perhaps be regarded as so affecting his conduct that a body within whose prerogative it lies to give weight to considerations to which a court, bound as it is to apply the law, cannot yield, might conclude that his crime does not merit the death penalty. But the evidence which was accepted as credible by the trial court sufficiently supports its conclusion. The threat uttered by the defendant, his inquiry of the storekeeper on the day of the crime as to Farley and his waiting for him outside the tavern, his normal greeting to his acquaintance just before the shooting, the absence of aggression upon Farley's part, the defendant's remark to Farley as he drew the revolver, his conduct in pursuing him into the building after the first shot and finally shooting him the third time after he had fallen to the floor, the fact that he walked to a tavern immediately thereafter and there ordered a drink, might well lead the trial court to the conclusion that it could not do otherwise than find present those elements which as matter of law characterize murder as of the first degree.

There is no error.

In this opinion the other judges concurred.