STATE OF CONNECTICUT *vs.* JOHN SIMBORSKI.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, JS.

Argued December 6th, 1935—decided January 7th, 1936.

*Michael J. Quinn,* with whom was *Bernard Pellegrino,* and, on the brief, *Philip Troup,* for the appellant (defendant).

*Abraham S. Ullman,* Assistant State's Attorney, with whom, on the brief, was *Samuel E. Hoyt,* State's Attorney, for the appellee (the State).

BANKS, J. The accused shot and killed Walter Koella, a police officer of the city of New Haven, while the latter was attempting to apprehend him for theft and statutory burglary committed by him a short time previous on the same day. The indictment contained three counts, the first charging wilful, deliberate and premeditated murder, the second murder by lying in wait, and the third murder committed in perpetrating the crime of statutory burglary. The accused elected to be tried by the court and was found guilty under the first count and not guilty under the second and third counts.

During the progress of the State's case, counsel for the accused filed a motion to quash the third count of the indictment claiming that the provision of the statute (General Statutes, § 6043) that murder committed in perpetrating a burglary is murder in the first degree should be construed as referring only to common-law burglary and not as including so-called statutory burglary—that is a breaking and entering in

the day season—as alleged in the third count of the indictment. They also, at the close of the evidence, moved to dismiss the third count of the indictment for the same reason. The court denied both motions and this action is one of the grounds of appeal. Since the accused was found not guilty under the second and third counts he could not have been harmed by the denial of these motions. Evidence was admitted as to the acts of the accused while perpetrating a statutory burglary prior to the homicide, and it is the claim of the accused that this evidence was admissible only under the third count, and that he was prejudiced since the court, in its consideration of the first count, must have been influenced by this evidence which was not relevant under that count. It will appear from our subsequent discussion of the rulings of the trial court to which exception was taken that this evidence was admissible and relevant under the first count upon which the accused was found guilty. It follows that he was not prejudiced by the denial of the motions to quash and dismiss.

That the accused shot and killed officer Koella is not disputed. He assigns error in that, he claims, the evidence did not establish beyond a reasonable doubt that the killing was wilful, deliberate and premeditated. He claims that the trial court has found a number of facts without evidence and has refused to find admitted and undisputed facts. While the finding serves the purpose of showing the conclusions reached by the trial court upon conflicting evidence, which if reasonably reached must be accepted, it is unnecessary to consider in detail the claimed corrections of the finding, since upon this assignment of error we go beyond the finding and, as in the case of an appeal in a trial to the jury from the denial of a motion to set the verdict aside, determine whether upon all the evidence the

court could reasonably have reached the conclusion that the accused was guilty as charged. *State* v. *Frost*, 105 Conn. 326, 332, 135 Atl. 466; *State* v. *Dodez*, 120 Conn. 216, 219, 179 Atl. 653.

The trial court has found, or could reasonably have found, the following facts: About nine o'clock on the morning of March 5th, 1935, the accused entered a house on Elm Street in New Haven, through a bedroom window, and stole some handkerchiefs, Shortly thereafter the police were notified and officer Kelly and other police officers were on the lookout for him. About ten o'clock the same morning the accused stole a loaded revolver and holster from the house of police officer Jordan on Dixwell Avenue, and strapped the holster over his right shoulder so that the revolver and holster rested under his left shoulder and beneath his partly open lumber jacket. Shortly before eleven o'clock the same morning the accused entered the house of one Moran on Harding Place, and upon being discovered escaped through a window. As Moran started in pursuit the accused exclaimed, "Oh you will, will you," and drew the revolver from underneath his jacket but dropped it and Moran retreated into the room. Shortly thereafter Moran saw the accused proceeding toward Sherman Avenue and notified the police.

In response to his call, officers Kelly and Koella came to the Moran home, where they commandeered an automobile and started in pursuit driving northerly on Sherman Avenue, officer Koella standing on the right running board and officer Kelly on the left running board, both in full uniform. As they proceeded up Sherman Avenue they saw the accused walking ahead of them and called to him and ordered him to stop. He turned around and looked at them but continued on, and upon reaching the premises known as

963 Sherman Avenue he stopped, turned and looked again at the officers, put his right hand under his jacket and turned into an alleyway leading to the rear of the premises. Both officers jumped from the automobile before it came to a complete stop and started into the alleyway after the accused, Koella being in the lead. As the accused approached the rear of the house he quickened his pace and disappeared around the corner of the house into the yard. As Koella came around the corner of the house he called upon the accused to "Halt," and the latter turned and shot him twice. When Kelly got to the corner of the house Koella was already upon the ground, the accused was standing in the yard with his revolver in his hand pointed at Kelly, and started firing at him. Kelly fired five shots at the accused, one of which struck him in the leg and he fell to the ground. After the shooting Kelly took the revolver from the accused and it was found to contain five empty shells. Koella did not draw his revolver before he was shot, and it was later found to be fully loaded. Koella died within a few hours of the bullet wounds inflicted by the accused and after having identified the latter as the man who had shot him.

The accused contends that he committed this homicide without malice aforethought, without deliberation and premeditation and without a specific criminal intent, and that therefore it was not first degree murder. The killing was done with a deadly weapon, and there were present no extenuating or mitigating circumstances. "From the unlawful killing of a human being without legal justification or excuse, where there are present no circumstances attending the killing which mitigate or extenuate it, the law implies malice and that the unlawful homicide is committed with malice aforethought." *State* v. *DiBattista*, 110 Conn. 549, 559, 148 Atl. 664. The crime committed by the ac-

cused was at least that of second degree murder. *State*
v. *DiBattista,* supra. It was, under our law, that of
first degree murder if the killing was wilful, deliberate
and premeditated. "The length of time necessary to
deliberate, or to form a specific intent to kill, need only
to be time enough to form a wilful, premeditated and
specific intent to kill before the killing; and if there
be such time, it is sufficient, no matter how long or how
short it may be." *State* v. *DiBattista,* supra, p. 561.

The accused had stolen the revolver with which he
shot Koella. He was being pursued by the police for
that and two other crimes which he had committed
that morning. He saw the officers approaching, and
was ordered by them to stop. Instead of doing so he
ran into the alleyway putting his hand into his jacket
where the revolver was suspended in the holster, and
as soon as officer Koella appeared around the corner of
the house shot him, not once but twice, from where he
stood in the back yard awaiting him. The inference
is permissible if not unavoidable that he carried the
revolver with the purpose of shooting and killing if
necessary to prevent his capture and this he actually
did. The trial court could reasonably find a deliberate
and premeditated design to effect the death of any
person who should attempt to prevent his escape.
*People* v. *Huter,* 184 N. Y. 237, 240, 77 N. E. 6;
*People* v. *Morse,* 196 N. Y. 306, 309, 89 N. E. 816.
Assuming that the accused did not decide to shoot until
he stopped in the back yard and Koella appeared
around the corner of the house, there was still time
for him to deliberate after he had stopped and while
he was removing his revolver from the holster. *People* v. *Morse,* supra, p. 310; *People* v. *Governale,* 193
N. Y. 581, 590, 86 N. E. 554. Officer Koella was shot
down while in the performance of his duty in attempt-
ing to arrest the accused, who was endeavoring to

escape arrest, and upon the evidence there is no escape from the conclusion that the killing was wilful, deliberate and premeditated, and with a specific criminal intent, and was therefore murder in the first degree. ' The accused makes the further claim that he was overcome by a sudden impulse to shoot due to his lack of mental stability and his inferior mental development, and that his crime was therefore manslaughter and not murder. If by this is meant that he was not mentally capable of forming a criminal intent, it finds no support in the evidence. The trial court found upon sufficient evidence that he had a bad background as to inheritance and family life, and was of low intelligence from an educational standpoint, but that although he had the mind of a twelve year old boy in its educational aspects, he had the experience and adult characteristics of a man twice that age, and at the time of the shooting was fully and completely sane, and knew the difference between right and wrong. '

The State in its case in chief offered the evidence of two witnesses to identify the accused as the man who entered the house on Elm Street and stole the handkerchiefs, and that of Moran to identify him as the man who entered his house, who also testified over the accused's objection as to what the latter said and did on that occasion. The accused objected to the admission of this evidence upon the ground that it was evidence of the commission by the accused of separate and distinct crimes unconnected with that for which he was being tried. Evidence of the commission by the accused of crimes unconnected with that for which he is being tried when offered by the State in chief violates the rule of policy which forbids the State initially to attack the character of the accused, and also the rule that bad character may not be proved by particular acts and is therefore inadmissible for that

purpose. *State* v. *Gilligan*, 92 Conn. 526, 530, 103 Atl. 649. But the inadmissibility of an evidential fact for one purpose does not render it inadmissible for some other purpose otherwise proper. 1 Wigmore, Evidence (2d Ed.) § 215. That evidence tends to prove the commission of other crimes by the accused does not render it inadmissible if it is otherwise relevant and material. *State* v. *Chapman*, 103 Conn. 453, 481, 130 Atl. 899; *Commonwealth* v. *Robinson*, 146 Mass. 571, 16 N. E. 452; Underhill, Criminal Evidence (4th Ed.) 333; 1 Wigmore, Op. Cit., § 216; 8 R. C. L. 200. The only question, therefore, under these assignments of error, is whether the evidence objected to, regardless of the fact that it tended to prove the commission of other crimes by the accused, was relevant to the issues under the first count of this indictment.

The relevant evidence of this homicide is not confined, as suggested in the brief of the accused, to what occurred after he became aware of the approach of the officers when he was near the alleyway. In no homicide trial is the State confined to proof of what occurred at the very time of the killing. It is entitled to trace the movements of the accused within a reasonable period prior to the instant of the crime. Proof of where he was and what he was doing during the two hours immediately prior to the shooting was proof of facts so intimately related to the commission of the crime as to form "an inseparable part of the whole deed." 1 Wigmore, Evidence (2d Ed.) § 218. These facts were a part of the chain of circumstances forming the history of the crime; that history, without proof of them, would have been incomplete and the evidence largely unintelligible. The proof of the homicide necessarily involved proof of the actions of the accused immediately preceding and subsequent to its actual commission in order to present a complete picture of

the entire transaction. *People* v. *Morse,* 196 N. Y. 306, 89 N. E. 816; *State* v. *Hickman,* 195 Iowa, 765, 193 N. W. 21; *Commonwealth* v. *Coles,* 265 Pa. St. 362, 108 Atl. 826; *State* v. *Millard* (Mo.) 242 S. W. 923; *People* v. *Estes,* 303 Ill. 602, 614, 136 N. E. 459; Underhill, Criminal Evidence (4th Ed.) §§ 182, 193.

Officers Kelly and Koella were seeking to apprehend the accused for the breaking and entering of the house on Elm Street and the Moran house a short time before. Evidence of such breaking and entering by the accused was also material to show the purpose of the officers in following him, and justification for their attempt to arrest him. It was also material for the purpose of showing his motive and the formation of a deliberate intention to shoot any person who attempted to prevent his escape. "It may be shown that the victim of a homicide for which the defendant is on trial was a police officer or other person who when he was killed was engaged in investigating the circumstances of another prior and independent crime of which the accused was suspected. . . . And generally if one crime may have been perpetrated for the purpose of aiding in the commission or concealment of another or to aid the escape of the accused the incidental crime may be shown as furnishing a motive for the commission of the crime for which the accused has been indicted." Underhill, Criminal Evidence (4th Ed.) § 184. In numerous cases it has been held that, when a police officer has been killed by one whom he was attempting to arrest while endeavoring to escape after the commission of another crime, evidence of the commission of that crime is material and relevant upon the prosecution for the homicide. *People* v. *Morse,* 196 N. Y. 306, 89 N. E. 816; *People* v. *Governale,* 193 N. Y. 581, 86 N. E. 554; *Commonwealth* v. *Morrison,* 266 Pa. St. 223, 109 Atl. 878; *State* v. *Hickman,* 195

Iowa, 765, 193 N. W. 21; *Lietz* v. *State*, 149 Wis. 462, 136 N. W. 166; *McHenry* v. *United States*, 276 Fed. 761. The evidence objected to was clearly relevant and material under the first count of the indictment. There is no error.

In this opinion the other judges concurred.