STATE OF CONNECTICUT *v.* MICHAEL JACOWITZ, JR.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued March 7—decided May 8, 1941.

*Reinhart L. Gideon,* public defender, with whom was *Charles E. Mahoney,* for the appellant (defendant).

*Hugh M. Alcorn, Jr.,* assistant state's attorney, with whom were *John P. Hodgson,* assistant state's attorney, and, on the brief, *Hugh M. Alcorn,* state's attorney, for the appellee (the state).

JENNINGS, J.   The defendant shot and killed Frank Saltus at New Britain on January 14, 1938.   He appeals from a judgment of guilty of murder in the second degree on the principal ground that, upon all of the evidence, he was not proven guilty of this crime beyond a reasonable doubt.   He also attacks the finding and assigns as error certain rulings on evidence.

The trial court, at the request of the defendant, made a finding of facts.   In its assignments of error the defendant seeks to have the finding corrected by striking out several paragraphs and adding others. The finding, however, contains no statement of conclusions reached by the trial court and consequently no error could be, or was, assigned as to them.   It is, however, assigned as error that the court erred in finding upon all the evidence that the defendant was proven guilty beyond a reasonable doubt.   In such a situation we must reach our conclusion from the evidence and a finding serves no purpose except to show conclusions reached by the trial court as to matters

where there might be a reasonable difference of opinion. *State* v. *Dodez,* 120 Conn. 216, 219, 179 Atl. 653; *State* v. *Simborski,* 120 Conn. 624, 626, 182 Atl. 221.

There was evidence from which the trial court could reasonably have found, as it did, the following facts: The defendant lived in a second floor tenement in New Britain with his father, mother, sister Helen, the latter's husband Charles Abuciewicz, and a younger brother. At about 9 p.m. on January 14, 1938, all of these persons except the last were at home. At that time Saltus rapped on the door to what is referred to as the middle room of the tenement and it was opened by Charles. Saltus was drunk and engaged in an argument with Charles relative to a quarrel, which had occurred earlier, between the younger brother of the defendant and his, Saltus', daughter. Attracted by this, the defendant and Helen entered the middle room from the adjoining kitchen. The defendant had some words with Saltus and ordered him from the house. Saltus refused to leave. The defendant turned around, went into the kitchen, took a loaded revolver from a shelf and, with the revolver in his hand, started toward the middle room where Saltus was standing. As the defendant reached the doorway he fired one shot at Saltus who stood in the middle room facing him and only three or four feet away. Saltus was hit in the abdomen. He placed his hands on the wound, turned, left the tenement and walked a short distance to a store where he collapsed. He died soon afterward. The defendant fled, was apprehended about two years later in Montana, and had a small arsenal in his possession at that time.

There was evidence which, the defendant claims, would establish the following facts: Saltus was armed with a knife; the defendant's sister, seeing it, called to look out because he had it; he cut her slightly with

it on the arm; the defendant saw Saltus coming toward him with the knife in his hand, raised above his shoulder, threatening to strike him or his sister; he instinctively seized the gun which was near at hand and shot Saltus; he did not intend to kill him; and he acted in self-defense and in defense of his home and sister. All the witnesses who saw the occurrence and upon whose testimony he relies were members of the household where he lived and closely related to him by blood or marriage; the testimony of the various witnesses differed in important respects; some of it was highly improbable; there was other evidence which seriously controverted it in certain matters; and there was testimony that when the police officers interviewed the members of the household immediately after the shooting, no one stated that Saltus was armed. The trial court has found that Saltus was unarmed, that no one in the tenement was in danger of suffering any substantial injury from him, and that Saltus neither threatened nor attacked anyone there. The trial court could reasonably find these to be the facts, and that finding is conclusive upon us.

The fact that the defendant relied in part on the evidence of witnesses offered by the state does not alter the situation. It was the duty of the state to offer every available witness whose testimony would aid the trial court in arriving at the truth of the matter and of the trier to accept that evidence which it deemed most credible. *State* v. *Guilfoyle*, 109 Conn. 124, 133, 145 Atl. 761. It all comes down to credibility, under all the circumstances, and this is for the trier of the fact. *Frisbie* v. *Schinto*, 120 Conn. 412, 414, 181 Atl. 535. The finding is that no facts warranting self-defense existed. This imports that the court did not credit the claims of the defendant. It follows that there was no reasonable ground for the defendant's

claimed belief that the use of this dangerous weapon was necessary to protect either himself or his family from bodily harm. There was, therefore, no justification or excuse for his act. *State* v. *Engle,* 115 Conn. 638, 648, 162 Atl. 922.

Murder, at common law, is the unlawful killing of one human being by another with malice aforethought. *State* v. *McGuire,* 84 Conn. 470, 481, 80 Atl. 761. The Connecticut statute, Cum. Sup. 1935, § 1685c,[1] has not changed this definition but provides a more severe penalty where certain features such as premeditation are present. *State* v. *Cross,* 72 Conn. 722, 729, 46 Atl. 148. The only element of the definition of second degree murder seriously claimed by the defendant not to have been satisfied is that of malice aforethought. The following definition has been approved: "This malice [malice aforethought] is the characteristic mark of all murder as distinguished from the lesser offense of manslaughter which lacks it. . . . It does not mean simply hatred or specific animosity, . . . but it extends to and embraces generally the spirit or state of mind with which one approaches and commits a given act. It may of course be discoverable in a specific, deliberate intent to kill, but it may also be inferred or implied from circumstances which show a wanton and depraved spirit, a mind bent on mischief and evil without regard to their consequences. . . . Malice in this sense includes all those states of mind in which a homicide is committed without legal justification, extenuation or excuse." *State* v. *McGuire,*

[1] Sec. 1685c. Murder; degree; trial. All murder perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate and premeditated killing, or committed in perpetrating, or in attempting to perpetrate, any arson, rape, robbery, or burglary, or injury to any person or property by means of any explosive compound, shall be murder in the first degree; and all other kinds of murder shall be murder in the second degree; . . .

supra, 475, 483; *State* v. *Fellovic,* 110 Conn. 303, 307, 147 Atl. 801; 1 Wharton, Criminal Law (12th Ed.) § 146 et seq. Applying this definition to the facts of this case, it is obvious that the finding of malice aforethought was justified. True, the defendant was in his own home, but that fact was no justification or excuse for deliberately shooting to death an unarmed, drunken intruder who was not making an assault upon or threatening him or other members of the household and whom he did not even know. *State* v. *Scheele,* 57 Conn. 307, 319, 18 Atl. 256; *State* v. *Panucci,* 95 Conn. 74, 109 Atl. 294; *State* v. *Engle,* supra.

The rulings on evidence complained of were either discretionary as to order of proof or ruled by previous decisions and do not require particular notice.

There is no error.

In this opinion the other judges concurred.