STATE OF CONNECTICUT *v.* ROBERT N. MALM

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and COVELLO, Js.

Argued December 7, 1954—decided February 1, 1955

*James D. Cosgrove,* public defender, for the appellant (defendant).

*Albert S. Bill,* state's attorney, with whom, on the brief, was *Douglass B. Wright,* assistant state's attorney, for the appellee (state).

BALDWIN, J. The defendant was charged with murder in the first degree. He elected trial to a court of three judges. General Statutes, Cum. Sup. 1953, § 2511c. The court found him guilty as charged and

he has appealed. The errors assigned are the denial of the defendant's motion to dismiss the indictment, the admission of his oral and written confessions in evidence, and the conclusion of his guilt of first degree murder. Error is also claimed in the finding. Ordinarily, a finding serves the purpose of showing the facts found by the trial court and the conclusions reached thereon. If the conclusions are reasonably reached upon conflicting evidence, they must be accepted. In a case such as this, it is unnecessary to consider in detail claimed corrections in the finding. One of the errors assigned is the conclusion of the guilt of the defendant. In passing upon that claim, we go beyond the finding and, as in the case of an appeal in a trial to the jury where error is claimed in the denial of a motion to set the verdict aside, we determine whether upon all the evidence the court could reasonably have reached the conclusion that the defendant was guilty as charged. *State* v. *Simborski,* 120 Conn. 624, 626, 182 A. 221.

We shall consider first the question whether the evidence establishes that the defendant was guilty as charged. The court could reasonably have found the following facts: Shortly after 8 o'clock on the morning of December 10, 1953, the lifeless body of eleven-year-old Irene Fiederowicz was found in the rear yard of a single-family house at 80 Coolidge Street, in a residential section of Hartford. A scarf was tied tightly around her neck. The tissues of her face and head were red and congested. Some bloody mucous exuded from her nose. Death had been caused by strangulation. Irene lived with her mother and brother at D-10 Dart Street, not far from where the body was found. After supper on December 9, Irene's brother having gone out, her mother sent her to a store on New Britain Avenue to purchase some pota-

toes and cookies. It was a cloudy, dark night and a light rain was falling. In a small green purse Irene carried the dollar bill her mother had given her and the note listing the items to be purchased. She stopped on the way to play with four young girls of her acquaintance and later was observed as she approached the store. A short time after that, the four girls with whom she had been playing saw a girl and a tall boy and followed them down Sequin Street, a residential street which is parallel with, and next south of, Coolidge Street. They called to the girl but got no response. The couple disappeared into a yard at or near 42 Sequin Street. The four girls followed, but a voice from the rear yard called, "Beat it." On the afternoon of December 10, a bag of potatoes and cookies purchased at the store on New Britain Avenue was found in the rear yard of 42 Sequin Street.

The defendant, thirty years of age, had been employed as a dishwasher at the Cedarcrest Sanatorium for some time prior to December 9, 1953. On that day he left Cedarcrest about noon and came to Hartford. He did some shopping, went to a motion picture theater, got something to eat and walked out to Sequin Street, traversing several streets on his way. There he met Irene. She said, "Hello," in a manner which indicated to him that she thought she knew him. He stood talking with her until he heard and saw the girls with whom Irene had stopped to play on her way to the store. He then led Irene down the driveway at 42 Sequin Street to the rear of the house, where they hid behind a boat stored on blocks in the back yard. As the girls came into the driveway, he called out, "Beat it." After that, he helped Irene over the fence in the rear of the yard and took her through back yards to Coolidge Street,

across that street, and down the driveway to the back yard of 80 Coolidge Street.

In that back yard there was a small building which was built for a dollhouse but was more recently used to store tools. It was located in the rear corner of the lot. The defendant took Irene behind this building. She told him that she must return home before her brother. The defendant caused Irene to take off her jacket, dungarees and panties, in spite of her remonstrances, and to lie down on her coat on the ground beside him. While she lay on the ground, Irene said that she would have to get home because her mother would be looking for her. It is unnecessary to state the sordid details of what then took place. While the defendant did not have normal sexual relations with Irene, he did commit acts of indecency upon her which gratified his sexual desires. While he was helping her to put on her clothes, Irene said that she was going to tell her mother. The defendant was worried. As Irene was tying the scarf she wore around her neck, the defendant, who was standing with his hands on her shoulders, took both ends of the scarf, pulled it tight and tied a second knot in it, making it a hard square knot. Irene collapsed and fell to the ground. He made no attempt to help her. He watched her awhile, and then, thinking that she was dead, left and returned to Cedarcrest.

A wilful, deliberate and premeditated killing is murder in the first degree. General Statutes § 8350; *State* v. *Donahue,* 141 Conn. 656, 659, 109 A.2d 364. Considering the evidence from the angle most favorable to the defendant, it could be said that he did not conceive an intent to take the life of his victim until after the sexual episode described. This left but a short time for him to deliberate and premedi-

tate before forming a specific intent to kill her. But the length of time elapsed is not the test. The question is whether the court could reasonably conclude that there was sufficient time to enable the mind of the defendant to conceive a wilful, deliberate, premeditated intent to kill before the act was done. *State* v. *Smith,* 49 Conn. 376, 389; *State* v. *Candido,* 93 Conn. 242, 246, 105 A. 442; *State* v. *DiBattista,* 110 Conn. 549, 561, 148 A. 664; *State* v. *Simborski,* 120 Conn. 624, 629, 182 A. 221; *State* v. *Zukauskas,* 132 Conn. 450, 455, 45 A.2d 289. As the defendant stood talking with Irene on Sequin Street she said that she had to get home before her brother. She repeated this when they were in the rear of 80 Coolidge Street by the dollhouse. While they were lying on the ground she said that her mother would be looking for her. When she was putting her clothes on, she threatened to tell her mother. The defendant admitted that he was worried. There can be no doubt that he knew that he had done wrong and feared detection. They were in a dark, secluded spot. Under these circumstances, the conclusion that he formed a wilful, deliberate intent to kill her is reasonable and logical. His crime was murder in the first degree.

General Statutes, § 8799, provides that "[n]o person shall be convicted of any crime punishable by death without the testimony of at least two witnesses, or that which is equivalent thereto." The defendant moved to dismiss the indictment because the evidence did not satisfy this test, and he claims error because the court denied his motion. We have considered this statute in many cases, more recently in the case of *State* v. *Taborsky,* 139 Conn. 475, 483, 95 A.2d 59. Simply stated, the statute requires "that the proof of all the essential elements of the

capital crime charged (each of which must be proved beyond a reasonable doubt) shall not depend upon the testimony of one witness." *State* v. *Schutte,* 97 Conn. 462, 468, 117 A. 508; *State* v. *Marx,* 78 Conn. 18, 21, 60 A. 690; *State* v. *Chapman,* 103 Conn. 453, 467, 130 A. 899; *State* v. *Cots,* 126 Conn. 48, 56, 9 A.2d 138. The crime was committed in the evening of December 9. The defendant was taken into custody on the evening of December 12. From that time on he was questioned at intervals, first about another incident, which had occurred in November, 1953, and then about the crime here charged, until he confessed at 9:30 o'clock on the evening of December 15. The confession of the defendant as he gave it orally was offered in evidence through the testimony of a police officer. His signed confession was offered as an exhibit. The state relied heavily upon this evidence. But there was much corroborating testimony. Witnesses saw what they described as a tall boy and a girl disappear down a driveway on Sequin Street at the time the defendant stated that he did so. They heard him shout, "Beat it," as he said he had. The bag containing potatoes and cookies which Irene had purchased at the store was found in the back yard of 42 Sequin Street. The jacket which Irene wore was identified by some of the witnesses who saw her on Sequin Street with a boy. The fruit of what is botanically known as Bidens frondosa (beggar-ticks), which grew in the yards in the rear of both 80 Coolidge Street and 42 Sequin Street, was found on the clothing of both Irene and the defendant. Police officers testified that after the defendant had confessed he took them over the course which he had followed on the night of the crime from the motion picture theater to the place where the body of Irene was found. These instances

of corroboration are but a few of many which could be recited. It is fair to say that practically every important detail of the defendant's statements to the police officers concerning his actions on the evening of December 9 was checked and evidence confirming it offered at the trial. Much of the corroborating evidence had been obtained before the defendant confessed. The requirements of the statute were more than met. The motion to dismiss was properly denied.

Error is assigned in the admission in evidence of the defendant's oral and written confessions, and the claim is made that they were not given voluntarily. The defendant was arrested on December 12. He confessed on December 15. During these three days he was questioned intermittently, on several occasions at considerable length. The course followed by the police to secure the confessions, oral and written, as disclosed by the transcript of all the testimony in the case, furnishes no basis for the claim that they were involuntary. *State* v. *Tomassi,* 137 Conn. 113, 127, 75 A.2d 67; *State* v. *Guastamachio,* 137 Conn. 179, 183, 75 A.2d 429; *State* v. *Buteau,* 136 Conn. 113, 121, 68 A.2d 681; 2 Wharton, Criminal Evidence (11th Ed.) pp. 1024, 1026, 1031, 1034; Underhill, Criminal Evidence (4th Ed.) § 269; 20 Am. Jur. 432 § 500, 429 § 496.

One phase of this matter, however, requires further discussion. The state offered the testimony of Detective Mancini of the Hartford police department as bearing upon the voluntary aspect of the defendant's confessions. On cross-examination Mancini was questioned with regard to his knowledge of the statements concerning the death of Irene Fiederowicz made by a soldier named Williams. Mancini was asked whether his knowledge indicated

that Williams had made a statement admitting that he had been the one who had killed Irene. The state's objection to the question was sustained. The defendant claims that the witness should have been permitted to answer because the failure of Mancini to disclose this knowledge to the defendant, whom he was questioning, bore upon the voluntary aspect of the statements made by the defendant. Mancini was under no duty to disclose to the defendant any knowledge he might have concerning Williams' admissions. Withholding information concerning other persons who might be involved in the investigation of a crime is no different in kind from the giving of false information concerning them, and yet the latter conduct, while not commended, has been held not to render a confession involuntary. *State* v. *Palko,* 121 Conn. 669, 680, 186 A. 657; 2 Wharton, Criminal Evidence (11th Ed.) p. 1044; Underhill, Criminal Evidence (4th Ed.) § 270; 20 Am. Jur. 444, § 519. Had Mancini's knowledge been divulged to the defendant it may be that he would not have confessed, in the hope that the crime would be laid at another's door and that he would escape. Viewed from this angle, the failure to divulge any information concerning Williams' statement could have no bearing whatever upon the question whether the defendant's confessions were voluntary. To fully cover this episode in the case, the defense offered Chief Godfrey of the Hartford police department as a witness. He testified that he had talked with Williams and that Williams' story differed so vitally from the facts of the crime as they had been disclosed that Williams could not have been the person who killed Irene Fiederowicz.

There is no error.

In this opinion the other judges concurred.