Lawrence Newmark, J.
Defendant was charged with the crime of assault in the third degree in violation of section 120.00 of the Penal Law. The case was tried by the court without a jury since the defendant is an apparently eligible youth.
The complainant and the defendant were playing as participants on opposite teams in a football game. The defendant was carrying the ball when the complainant tackled him. In the course of the tackle the complainant punched the defendant in the throat. Both fell to the ground and there was a pileup. After all of the players got off of the defendant he punched the complainant in the eye with intent to cause physical injury, causing the damage including a laceration requiring plastic surgery, as shown in the hospital report received in evidence.
*282 The area of law involving the above facts, "violence in organized sports,” is an extremely current, controversial and a "grey” area in the law. Many questions remain unanswered.
There aré generally two defenses presented to assaultive attacks by participants in sporting events. Generally, these are: (1) that the act was consented to as being part of the game, referred to as the "consent defense.” Secondly, (2) that the act was justified as an act of "self defense.”
1. The Consent Defense:
In 1969 an altercation during the course of a professional hockey game resulted in the prosecution of two participants, Edward "Ted” Green and Wayne Maki, for assault. The incident began during the game when Green struck Maki in the face with a gloved hand. While the testimony was conflicting, it appeared that Maki retaliated by striking Green in the lower abdomen with his hockey stick. A stickfight ensued in which Green first struck Maki near the shoulder and Maki countered with a blow which fractured Green’s skull. Maki was charged with "Assault causing bodily harm.” Green was charged with simple assault. Both individuals were acquitted.
The first of these cases to be tried, Regina v Maki, in 1970 in Ontario Provincial Court (10 CRNS 268; 13 Amer Crim L Rev, p 235), discussed the consent defense in dicta. The court in that case concluded (p 241) that the defense could not apply on the facts of the particular case saying "no athlete should be presumed to accept malicious, unprovoked, or overly violent attack.” The theory of the consent defense is simply that in all sports participants "consent” by the very nature of the sport to certain acts of violence. In Regina v Green, tried in 1970 in Ontario Provincial Court (16 DLR3d 137; 13 Amer Crim L Rev, p 235), the Judge determined that the victim had consented to being struck in the face by a gloved hand, because the victim knew this was a common practice in hockey games and was not likely to be seriously injured.
The courts in the above cases drew two conclusions. (1) There is a limit to the magnitude and dangerousness of a blow to which another is deemed to consent. (2) In all sports players consent to many risks, hazards and blows.
In these particular instances the court felt that a blow to the face by a gloved hand was consented to by the participant.
2. The Defense of Justification. "Self Defense”:
"Section 35.00 et seq. of the Penal Law governs the defense *283 of justification. Section 35.10 provides that the use of physical force is justifiable and not criminal when (under subd. 6) a person is defending himself or another, defending property, making an arrest or preventing escape. Section 35.15 provides that a person is justified in using physical force on another in order to defend himself or a third party from what he reasonably believes to be the use or imminent use of unlawful physical force, to such a degree as the actor reasonably believes is necessary. However, a person is not justified if he provoked the use of such unlawful physical force, or he was the initial aggressor (with an exception for situations where the actor has withdrawn from the encounter and communicated such withdrawal); or the force involved was the result of agreed upon combat not authorized by law.” (People v Gibaldi, 75 Misc 2d 811, 812.)
In the case at bar one player tackles another and in doing so allegedly throws a punch; after an intervening pile-up the player receiving it punches back, causing injury to the eye of the alleged initial aggressor.
Initially it may be assumed that the very first punch thrown by the complainant in the course of the tackle was consented to by defendant. The act of tackling an opponent in the course of a football game may often involve "contact” that could easily be interpreted to be a "punch”. Defendant’s response after the pileup to complainant’s initial act of "aggression” cannot be mistaken. Clearly, defendant intended to punch complainant. This was not a consented to act.
Hypothetically speaking, if defendant, after receiving the alleged initial punch, believed he was vulnerable to further attack, and was lying on the ground in a pileup, his actions may very well be justified, especially if complainant ended up on top of defendant. If, however, defendant rolled free and was not vulnerable to further attack his actions could not be deemed reasonable.
The statute, subdivision 1 of section 35.15 of the Penal Law, uses the language, "what he reasonably believes”. Since it is impossible to determine what defendant believed, we can only infer his feelings by witnesses’ observations concerning whether or not it appeared that defendant could have been vulnerable to further attack.
Initially it should be noted that justification for an assault should not be presumed. Although the burden of proof rests with the People, the defendant must go forward in the first *284 instance to show the justifiableness of an assaultive act. (See People v Gibaldi, 75 Misc 2d 811, 813 supra.) In the Gibaldi case, the court dealt with the question of whether or not it was reasonable for the defendant to believe that complainant would attack him. In the case at bar, a similar question must be answered, to wit, whether or not defendant believed he was under attack and whether he had a right to this belief.
The court in the Gibaldi case, notes that the test of whether the defense of justification may be asserted, is dependent upon whether there was reasonable ground for the belief. "Any person who commits violence in his personal defense must not only believe he is in danger but he must in fact have reasonable ground for that belief’. (People v Gibaldi, supra, p 812, citing People v Governale, 193 NY 581.) Further, "the question is not merely what did the defendant believe, but what did he have a right to believe.” (People v Gibaldi, supra, p 812, citing People v Rodawald, 177 NY 408.)
In the case before the court the testimony made it abundantly clear that any attack which the defendant may have believed was being made upon him was terminated by the pileup which ensued after the initial contact between the complainant and the defendant at the time of the tackle. After the other players got up and off of the defendant he got up on one kneee while the complainant was lying supine and forcibly struck the complainant with his fist. The court has no alternative other than to find that the time and acts intervening between the two occurrences deprived the defendant of any reasonable basis to believe that he was in danger.
The court finds that the People have proved beyond a reasonable doubt that the defendant is guilty of the crime of assault in the third degree in violation of section 120.00 of the Penal Law of the State of New York. This matter is set down for determination of defendant’s eligibility for youthful offender treatment and sentencing on May 21, 1976. A probation report shall be ordered and the defendant is requested to communicate with the Probation Department to assist them in commencing their investigation.